## FRANK X. SCHATTGEN

*v.*

## ADOLPH HOLNBACK.

*Filed at Springfield April 2, 1894.*

1. MALICIOUS PROSECUTION—*gist of the action—defective complaint.* It is not necessary, in order to sustain this action, to show that the affidavit, information or indictment properly charged the offense for which the plaintiff was prosecuted. The gist of the action is the criminal prosecution, instituted with malice and without probable cause, resulting in damage to the plaintiff, by depriving him of his liberty, injuring his reputation or putting him to expense. These concur in a prosecution upon an insufficient information, the same as upon a sufficient one.

2. SAME—*probable cause—question for the jury.* Where the facts relied on as showing probable cause are controverted, it is very clear that they must be settled by the verdict of a jury before the court can apply the law to them. In such case, the practice in this State is to treat it as a mixed question of law and fact, to be submitted to the jury, under instructions as to what amounts, in law, to probable cause.

3. On the trial of an action for malicious prosecution, the jury, on behalf of the defendant, were instructed, that if they "believe, from the evidence, that the defendant, when he instituted the prosecution complained of, honestly believed the plaintiff was guilty of the offense charged, and the defendant's belief was founded on a knowledge of circumstances tending to show guilt, and sufficient to induce in the mind of an ordinarily reasonable, cautious man the belief of such guilt, then such belief on the part of the defendant negatives the idea of the want of probable cause:" *Held*, that the question of probable cause having been properly submitted to the jury, this court, being without means of knowing what particular facts were found, was powerless to determine, as matter of law, whether probable cause existed or not.

4. SAME—*advice of counsel—as a defense.* An instruction in an action for malicious prosecution, which seeks to present the advice of an attorney as a defense, should state that the attorney consulted was in good standing for skill, prudence and fairness, and show that the advice was sought in good faith.

5. The good faith with which the advice is sought, as well as followed, is of the first importance. The accuser must not only have reason to believe the party guilty, but he must honestly so believe, in fact; and he should state to his attorneys the facts and circumstances

tending to show probable cause, and not his own conclusion of guilt, if he desires to place himself in a position to insist on an instruction as to the defense of the advice of counsel.

6. HARMLESS ERROR—*in excluding evidence.* The refusal to allow certain questions to be asked will afford no ground of reversal, where the party complaining has had the full benefit of the testimony excluded by questions allowed.

7. INSTRUCTIONS—*need not be repeated.* There is no error in refusing an instruction which is fully covered by two others which are given.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. J. S. CARR, and Mr. H. W. POGUE, for the plaintiff in error:

A party ought not to be held guilty, when he sets in motion a criminal prosecution, simply because he fails to convict the person accused, or, indeed, in every case where he fails to show the party was guilty. The policy of the law is rather to encourage the prosecution of criminals alleged to be guilty of grave offenses; but if the prosecuting witness is to be mulcted in damages for an honest error in judgment, few prudent men would run the hazard of instituting a criminal prosecution. It is sufficient if there is probable cause, whether the accused is, in fact, guilty or not. *Ames* v. *Snider*, 69 Ill. 376.

The bad character of the plaintiff is ground of augmenting a suspicion against him. It tends to increase the probable cause. *Israel* v. *Brooks*, 23 Ill. 576; *Anderson* v. *Friend*, 71 id. 479.

The affidavit failed to give the court jurisdiction. *Housh* v. *People*, 75 Ill. 488; Moak's Underhill on Torts, 192.

Malice and want of probable cause are necessary to the action. *Jacks* v. *Stimpson*, 13 Ill. 703; *Wade* v. *Walden*, 23 id. 426.

The question of probable cause is made up of law and fact. It is a mixed question. *Wade* v. *Walden*, 23 Ill. 426; *Israel*

v. *Brooks,* id. 576; 1 Greenleaf on Evidence, sec. 406; *Ross* v. *Innis,* 26 Ill. 259; *Ames* v. *Snider,* 69 id. 376; *Angelo* v. *Faul,* 85 id. 108.

Mr. THOMAS F. FERNS, and Mr. O. B. HAMILTON, for the defendant in error:

To protect himself the defendant must make a full statement of all material facts. He will not be protected if he makes a garbled and untrue statement. *Roy* v. *Goings,* 112 Ill. 656; *Biedler* v. *Bierwart,* 25 Ill. App. 422.

An action for malicious prosecution will lie for instituting a criminal prosecution on a complaint which does not show an offense committed. Newell on Malicious Prosecution, p. 29, secs. 21, 22; 2 Greenleaf on Evidence, (13th ed.) sec. 449; Bishop on Non-Contract Law, sec. 228; 14 Am. & Eng. Ency. of Law, 58, notes 2, 3; *Shaul* v. *Brown,* 28 Iowa, 37; *Dennis* v. *Ryan,* 65 N. Y. 385.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

Appellee brought his action on the case against appellant for a malicious prosecution, in the circuit court of Jersey county, and there recovered a judgment for $1000. That judgment has been affirmed, and the record is brought before us by this writ of error.

The case was tried in the circuit court upon the second count of the declaration, which alleged that the defendant instituted a prosecution in the county court of said county, against the plaintiff, for selling the flesh of a diseased animal, maliciously and without any reasonable or probable cause, of which charge he was afterwards, upon trial by a jury, duly acquitted and discharged. The plea was, not guilty.

A brief summary of the facts pertaining to the prosecution declared upon, is as follows: The parties had resided in Jerseyville for many years. They were butchers, and each kept a meat market in that place. Each had previously sued

the other, and they were not on speaking terms with each other. In April, 1890, the plaintiff bought four head of beef steers from one Campbell, some distance from Jerseyville. One of them had a "lump" or "knot" on the right upper jaw, between the eye and nostril. They were driven from about eight o'clock in the morning until three in the afternoon, and the one described was slaughtered about an hour later by plaintiff and the beef sold in his market. The theory of the prosecution in the county court was, that the steer was diseased with "lumpy jaw." On the trial of the case the principal controversy was as to whether the defendant had probable cause for believing and making the charge that the animal was so diseased. That he had a lump on the jaw, was slaughtered by plaintiff, and sold for food, was not denied upon this trial, but the plaintiff claimed, and proved by Campbell, of whom he purchased the steer, the butcher who slaughtered him, and others, that the blemish was a small, hard knot, about the size of a white walnut, their testimony tending strongly to prove that it was an enlargement of the bonè, not affecting the flesh, and Campbell accounted for it by his having knocked out several of the teeth, to relieve the animal, as he says, of "tooth ache." On the other hand, the defendant and other witnesses testified that the enlargement was some four inches long, extending from near the eye to the nostril, being in the form of the two hands with the palms together, and "a lump or knot in the center." Some of these witnesses say it had the appearance of the disease known as "lumpy jaw;" also, that the animal, by its general appearance and loss of flesh, indicated that it had that disease, and it was insisted, on behalf of the defendant, that from these facts he had probable cause for believing the steer was so diseased. He also relied upon the defense of having taken and acted upon the advice of counsel in instituting the prosecution.

The first ground of reversal urged is, that the trial court erroneously treated the question of probable cause as one of

fact. In the original argument this contention is based on the refusal to give two instructions asked on behalf of the defendant. These instructions pertain to the defense of having acted under the advice of counsel. The first attempts to lay down the rule, that if the facts were laid before the State's attorney of the county and the prosecution advised by him, the defendant could not be held liable. The other is to the same effect, except that it attempts to state the rule as to legal advice, generally. At the request of the defendant the court did give this instruction:

"If, from the evidence, the jury believe that before the defendant began the prosecution mentioned in the evidence he went to the State's attorney, H. W. Pogue, and to two other attorneys of reputable standing in their profession, and fully, fairly and truthfully stated to each of them all the facts and circumstances within his knowledge, information and belief, and which he could then ascertain by due diligence, touching the supposed offense by Adolph Holnback, and that he, in good faith, sought and obtained the advice of said State's attorney and such other attorneys, and that they advised him that he had reasonable cause to institute the criminal proceedings against the plaintiff, Holnback, which are complained of in this case, and that thereupon the defendant, Schattgen, in good faith acted upon such advice, and whilst so doing began and prosecuted the action complained of in this cause, then the plaintiff can not maintain this suit against him, whether Holnback was guilty of the offense charged against him by Schattgen or not, and the jury should in such case find for the defendant."

The Appellate Court held that the two refused were fairly covered by this and the sixth, given at the instance of the plaintiff.

In view of the defendant's evidence we are unable to see how it can be seriously contended that the giving of those refused would have amounted to more than a reiteration of the

rules of law announced in the one here set forth. But neither of those refused accurately stated the rule as to the requirement that the attorney consulted must have been "in good standing for skill, prudence and fairness." (*Roy* v. *Goings,* 112 Ill. 656.) The first also lacks the essential qualification that the advice of counsel was sought in good faith. The good faith with which the advice is sought, as well as followed, is of the first importance. (*Ross* v. *Innis,* 26 Ill. 259; *Ames* v. *Snider,* 69 id. 376; *Anderson* v. *Friend,* 71 id. 475.) The accuser must not only have reason to believe the party guilty, but he must honestly so believe, in fact. As the evidence appears in this record, it is very questionable whether the defendant placed himself in a position to insist on instructions as to that defense at all. Instead of stating to the attorneys the facts and circumstances upon which he based the belief that the animal was diseased, and allowing them to decide whether there was probable cause for that belief, he stated merely his own conclusion,—"said he was right; that there was no question about it," etc. He should have stated to the jury fully the facts which he communicated to the attorneys, and the question was then for it, under proper instructions, whether he had made a complete and fair statement to such attorneys, and acted in good faith, under their advice. (*Anderson* v. *Friend, supra,* and cases cited.) A party can not go to an attorney and assure him that there is no doubt of the guilt of another, without stating fully the facts upon which he makes the assertion, and then shift the responsibility of a prosecution upon the attorney because he advises it. But, in any view of the evidence, by the instruction given, the defendant had the full benefit of that defense. We are unable to see how the action of the court in refusing these instructions can, upon any theory of the case, be construed into a refusal to treat the question of probable cause as one of law. They were intended to submit the matter to the jury, to be determined according to the facts, as was done in other instructions given.

In the reply brief and argument of counsel for plaintiff in error it seems to be contended that the question of probable cause should be passed upon by this court as one of law, but how it is so presented and can be treated we are at a loss to understand. It is true that we often find it stated that probable cause is a matter of law, to be determined by the court, and where the facts are undisputed that is doubtless the rule easy of application; but where the facts relied upon as showing probable cause are controverted, and the evidence as to their existence is conflicting, it is very clear that they must be settled by the verdict of a jury before the court can apply the law to them. In such case the practice in this State, and many others, has been to treat it as a mixed question of law and fact, to be submitted to the jury under instructions as to what amounts, in law, to probable cause. (Newell on Malicious Prosecution, 278, and cases cited in note 3.) A different practice has been adopted by other courts. (*Driggs* v. *Burton*, 44 Vt. 124; *Ball* v. *Rawles*, 93 Cal. 222.) But we see no good reason for changing the practice here. Defendant's counsel evidently understood the mode of procedure in such trials to be as here indicated. They submitted no questions to the jury for special findings, nor did they ask the court to instruct the jury to find for the defendant. On the contrary, they submitted, and the court gave, the following and other like instructions on behalf of the defendant:

"If the jury believe, from the evidence, that the defendant, when he instituted the prosecution complained of, honestly believed the plaintiff was guilty of the offense charged, and the defendant's belief was founded on a knowledge of circumstances tending to show guilt, and sufficient to induce in the mind of an ordinarily reasonable, cautious man the belief in such guilt, then such belief on the part of the defendant negatives the idea of the want of probable cause."

The question then having been properly submitted to the jury without objection, and being without the means of know-

ing what particular facts were found, we are powerless to de-
termine, as a matter of law, whether probable cause existed
or not. It can not be said the facts are undisputed. It is
true that it was not denied that the defendant consulted with
the State's attorney and other lawyers, but it was not ad-
mitted that he acted in good faith in doing so, or that he
fully and fairly stated the facts within his knowledge, or
which, by the use of due care, he might have known. These
were facts, therefore, to be settled by the jury. (*Anderson* v.
*Friend, supra,* and cases referred to.) We are of the opinion,
then, that the question of probable cause was properly submit-
ted to the jury, and that its finding and judgment of affirmance
in the Appellate Court conclusively settle it against plaintiff
in error.

It is objected that the trial court improperly sustained
objections to certain questions propounded by counsel for de-
fendant to witnesses Millen, Cope and McReynolds, touching
the reputation of plaintiff for slaughtering and selling dis-
eased animals. Without consuming time in discussing the
propriety of the form of these questions, it is enough to say
that by answers to other questions the defendant had the full
benefit of the testimony of these witnesses on the subject of
inquiry, and was not, therefore, injured by the ruling of the
court on those objected to. Millen stated, without objection,
"The reputation I hear is that he has a habit of selling bad
meat." And on cross-examination he stated fully that he un-
derstood his reputation to be bad. Cope was asked, "If you
know the general reputation of Mr. Holnback in the county
where he conducts his business, for selling diseased meats of
any character, prior to the first of June, 1890, you may state
what that general reputation was." A. "Yes, sir; I only know
what I have heard." Q. "Was that good or bad?" A. "I
should think at the time it was bad." McReynolds was
asked, "Do you know the general reputation of Adolph Holn-
back as a butcher, prior to June, 1890, for selling diseased

meat?" A. "I know nothing personally,—I should think I did." Q. "Was that reputation good or bad?" A. "I have heard rumors to that effect." (Objected to, and excluded.) Q. "What effect? Is that reputation good or bad?" A. "Well, I would not consider it first class."

There was a motion in arrest of judgment on the alleged insufficiency of the affidavit made by the defendant, upon which the information against plaintiff was based, as set forth in the declaration. The objection to the affidavit is, that it failed to state that the plaintiff sold, or kept for sale or offered to sell, diseased meat for food. It is said, by reason of the omission of the words "for food," no offense was charged under the statute, and therefore no jurisdiction was given the county court. The whole argument is fallacious, in assuming the insufficiency of the affidavit. It did allege the *unlawful* selling, etc., and also states that it was done contrary to the form of the statute. But if it were otherwise, the motion in arrest was properly overruled for the reasons stated in the opinion of the Appellate Court. And again, it is not necessary, in order to sustain an action for malicious prosecution, to show that the affidavit, information or indictment properly charged the offense for which the plaintiff was prosecuted. "The gist of the action is the criminal prosecution, instituted with malice and without probable cause, resulting in damage to the plaintiff, by depriving him of his liberty, injuring his reputation or putting him to expense. These concur in a prosecution upon an insufficient information, the same as upon a sufficient one." *Shaul* v. *Brown,* 28 Iowa, 37; *Forrest* v. *Collier,* 20 Ala. 175; *Dennis* v. *Ryan,* 65 N. Y. 385.

Other grounds of reversal have been urged, some of them for the first time in the reply brief and argument, but we have given all of them the attention which we think they deserve, and find them without substantial merit. The case is an important one, and we have endeavored to give it careful consideration.

We are clearly of the opinion that there is no reversible error of law in the record, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*