### STUEBER et al. v. ADMIRAL CORP.
### No. 10057.

United States Court of Appeals
Seventh Circuit.

Oct. 19, 1950.

Rehearing Denied Dec. 12, 1950.

Francis H. Uriell, W. McNeil Kennedy, John R. Whitman, Chicago, Ill., Pope & Ballard, Chicago, Ill., of counsel, for appellant.

Julius L. Sherwin, Theodore R. Sherwin, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant appeals from the judgments entered against it in the District Court on the second trial of this consolidated action for malicious prosecution, assigning as error (1) denial of its motions for directed verdicts, made at the close of plaintiffs' case and again at the close of all the evidence, (2) admission of certain evidence offered by plaintiffs and exclusion of other evidence offered by defendant, (3) giving certain instructions requested by plaintiffs and refusal to give other instructions requested by defendant, and (4) refusal to set aside as excessive the verdicts returned by the jury.

On May 1, 1946, defendant's Chicago warehouse was burglarized and some $19,000 worth of merchandise stolen, consisting, in part, of 3,125 radio loud speakers, each stamped with defendant's exclusive part number "78 B 7", and 2,066 needle cards, on each of which were mounted 12 Admiral "Lifetime" phonograph needles. In the summer of 1946, Louis Marek, a police officer in charge of the investigation of the burglary, was informed by the operator of a radio store that he had purchased Admiral needle cards at an unusually low price from a concern identified as Chicago Radio Parts Company. The police, having determined that plaintiffs, Robert and James Stueber, were the owners and operators of Chicago Radio Parts Company, a copartnership, and having kept them "under

surveillance" for a period of six weeks, ultimately placed them under arrest, on September 21, 1946.

Defendant first learned of the arrest on the morning of September 23, 1946, when Heinrich, defendant's office manager, received a telephone call from Detective Marek, who stated that he had some stolen merchandise which he wanted Heinrich to identify. Heinrich went to the detective bureau, where he was shown needle cards and speakers which, he was told by Marek, the police had recovered from some people "who were in possession of the stolen property." He was shown 109 needle cards, each containing 12 Admiral Lifetime needles, and nine Admiral speakers of the type stolen from defendant's warehouse. Heinrich was advised that the merchandise shown to him had been found in the basement of plaintiffs' store, the Chicago Radio Parts Company, and that plaintiffs, with two brothers named Svoboda, who operated a radio store in Cicero, Illinois, were being held by the police. Marek showed Heinrich three cancelled checks, totalling $1000, and said that plaintiffs had admitted that they used the proceeds of the checks to buy the Admiral speakers and needles from the Svobodas; Marek also told him, according to Heinrich, who was called as a witness for plaintiffs, that the police had signed statements from plaintiffs in which they admitted that they "knew it was hot stuff." Heinrich was also shown invoices indicating that plaintiffs had been selling Admiral speakers and needles within a few weeks after the burglary, at prices lower than the established price to dealers. He was then handed two complaints charging plaintiffs with the crime of receiving stolen property, which he refused to sign until he had conferred with his superior, Park, at defendant's office.

Prior to plaintiffs being taken into custody by the police, defendant's office manager, Heinrich, had never seen or heard of either of them, although defendant's wholesale distribution records listed plaintiff, Robert F. Stueber, as one of defendant's dealers, doing business as Bob's Radio Repair Shop at a North Avenue address, which was the same as that appearing on

the invoices of Chicago Radio Parts Company. Heinrich admittedly made no personal investigation of plaintiffs or of the manner in which they had acquired the Admiral merchandise, but, after his conference with Park, returned to the bureau and signed the complaints against plaintiffs. He testified that, in reading over the complaints, he noticed discrepancies between the numbers of speakers and needles he had been shown by the police and the quantities inserted in the complaints, but was informed by Marek that the numbers appearing in the complaints had been computed from invoices furnished by plaintiffs. Marek, on the other hand, testified that, at the time Heinrich signed the complaints, the numbers had not yet been inserted. These complaints were filed the next day, September 24, 1946, and, after two continuances granted to plaintiffs, a hearing was held on November 22, 1946, at the conclusion of which plaintiffs were discharged by the examining judge of the Municipal Court. Subsequently, each plaintiff filed suit against defendant. The actions were consolidated for trial and plaintiffs recovered judgments which were reversed by this court on appeal, because of the admission of improper evidence by the trial court. Stueber v. Admiral Corp., 171 F.2d 777. The second trial also resulted in judgments for plaintiffs, from which defendant prosecutes this appeal.

It is well settled in Illinois, as elsewhere, that the plaintiff in an action for malicious prosecution has the burden of proving both want of probable cause and malice. Jacks v. Stimpson, 13 Ill. 701, 702, 703; Harpham et al. v. Whitney, 77 Ill. 32, 38; Knickerbocker Ice Co. v. Scott, 76 Ill.App. 645, 647. In the last of the cited cases, probable cause is defined as "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense charged." It is defendant's contention that in the instant case, the uncontradicted evidence clearly establishes existence of probable cause for prosecution of the plaintiffs, and it is urged that the trial court erred in refusing to direct the

jury so to find. Plaintiffs, however, maintain that this court's holding, on the prior appeal, that it was for the jury to determine "whether all the facts and circumstances in evidence prove presence or lack of probable cause" became the law of the case on the second trial, thus precluding the trial court from directing a verdict on that issue and requiring that it be submitted to the jury.

It is, of course, true that the decision of an appellate court becomes the law of the case with respect to the particular questions presented to and decided by it and must be followed in all subsequent proceedings in that case, Aetna Life Ins. Co. v. Wharton, 8 Cir., 63 F.2d 378, 379; Standard Accident Ins. Co. v. Rossi, 8 Cir., 52 F.2d 547, 549; Lackner v. McKechney, 7 Cir., 2 F.2d 516, but, in a cause such as this, where the issue is whether the evidence presents a question for the jury or one for the court, the rule obtains only if the evidence adduced on the hearing on remand is substantially identical with that presented at the original trial. This is apparent from this court's opinion in Lackner v. McKechney, 2 F.2d 516, 517, where, after a general statement of the principle of the binding effect, in subsequent proceedings, of a decision on a prior appeal, it was said that "If, upon remandment of the cause and further hearing of the evidence, it appeared that the facts adduced were different from those dealt with on the prior appeal, a different finding might have been required." Thus, this court's holding on the prior appeal that the question of presence or lack of probable cause was one for the jury to determine is not decisive of that issue on this appeal unless the evidence is, as plaintiffs contend, substantially the same as that before the court on the prior appeal.

That there are substantial differences in the evidence which was before this court on the prior appeal and that which was presented at the second trial is, it seems to us, abundantly clear. Of the evidence produced at the first trial, this court observed that defendant's office manager, Heinrich, "testified that he received 'certain information' from the police but he did not disclose just what he had been told; the record is wholly silent as to just what information he had received from any source or upon what he had relied," and, concluding that "so far as this record discloses, he knew only that the goods had been picked up in plaintiffs' shop," we held that we could not say, as a matter of law, that probable cause existed. Stueber v. Admiral Corp., 171 F.2d 777, 779. When we contrast this with the record now before the court, revealing that Heinrich, testifying as a witness for plaintiffs, detailed the information which he received from the police and upon which he relied in signing the complaints charging the plaintiffs with receiving stolen property, it becomes evident that this is not a case for the application of the rule of law urged by plaintiffs and that the question of the propriety of the denial, by the trial court, of the defendant's motions for directed verdicts must be determined solely on the basis of the evidence appearing in the record made on the second trial, not by what this court said of substantially different evidence on the prior appeal.

It is, of course, elementary that, in reviewing the trial court's denial of defendant's motions for directed verdicts, it is the duty of this court to accept as true the evidence offered by plaintiffs and to draw therefrom the inferences most favorable to them. Worcester v. Pure Torpedo Co., 7 Cir., 140 F.2d 358, 359, Steber v. Kohn, 7 Cir., 149 F.2d 4, 6. Here, however, we are of the opinion that giving full credence to all of plaintiffs' evidence, it does not show that defendant instituted the prosecution of the plaintiffs without probable cause, for there is, in the record, certain uncontradicted evidence which establishes clearly that probable cause existed as a matter of law. Defendant's warehouse had been burglarized and large quantities of radio speakers and phonograph needles of the type stolen had subsequently been found in plaintiffs' shop. Cancelled checks and invoices disclosed that plaintiffs had purchased the merchandise at prices well

**14**

below the distributor's wholesale price and, similarly, had made sales at prices below the established price to dealers, and that both plaintiffs' purchase of the merchandise and a number of the sales made by them had taken place only a short time after the burglary, at a time when such merchandise was not available in large quantities to defendant's own distributors. In this connection, Heinrich testified that, when he signed the complaints, he believed plaintiffs were guilty of the crime of receiving stolen property "because of the fact that they couldn't have acquired a quantity like that except that it was stolen property." Finally, Heinrich had been told by the detective in charge of the case that the police had obtained "signed statements from the Stueber brothers in which the Stueber brothers had admitted a few days prior to the time they were arrested that they knew it was hot stuff."[1] This combination of facts and circumstances, we think, clearly establishes the existence, as a matter of law, of "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief" that plaintiffs were guilty of the offense charged. It follows that the trial court should not have submitted this question to the jury, but should have granted defendant's motions for directed verdicts.

In view of our conclusion that there was, as a matter of law, probable cause for the defendant's prosecution of the plaintiffs, it becomes unnecessary to consider the remaining grounds of error which have been urged by defendant. The judgments are reversed and the consolidated cause remanded, with directions to the District Court to enter judgments for the defendant.

[1]. Plaintiffs say that Detective Marek nowhere testified that he told Heinrich anything about "hot stuff," but he did not deny having made the statement, and, aside from the fact that plaintiffs would seem to be bound by the testimony of their own witness, Heinrich, it is not apparent how Marek's failure to corroborate Heinrich's testimony on this point could be said to have the effect of contradicting that testimony. Plaintiffs also urge that the fact that Heinrich signed the complaints at Marek's request or on his advice is no defense to this action, which is quite true, Hirsch v. Feeney, 83 Ill. 548, 550, but quite beside the point in this case, for Heinrich acted not on Marek's advice but on the basis of the information furnished by Marek. The Illinois cases certainly do not preclude reliance on information gathered by the police, or require that the person signing the complaint personally verify each item of information on which he relies in so doing, Gardiner v. Mays, 24 Ill.App. 286, 289.