Fred W. BRANDT, Plaintiff-Appellee,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.

No. 11475.

United States Court of Appeals Seventh Circuit.

April 11, 1956.

Stuart S. Ball, Chicago, Ill., Kenneth F. Burgess, H. Blair White, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellant.

Lester E. Munson, Simon Herr, Chicago, Ill., Louis A. Smith, Chicago, Ill., for appellee.

Before LINDLEY, and SCHNACKENBERG, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

The plaintiff obtained a verdict for $60,000 in a suit for malicious prosecution. Judgment was entered against the defendant, The Pennsylvania Railroad Company, and it has taken an appeal contending:

1. On the undisputed facts defendant had probable cause to initiate the prosecution of the plaintiff.

2. The trial court erred in admitting certain evidence:

(a) The return of the "Not a True Bill" by the State Grand Jury.

(b) The acquittal order of the plaintiff in the criminal proceedings of the federal court.

(c) Evidence of matters not known to the defendant when the prosecution was initiated.

(d) The termination of the plaintiff's employment for violation of company rule.

3. The verdict was the result of passion and prejudice.

4. The trial court erred in its instruction on the subject of damages.

The plaintiff originally filed a two count claim for relief. The first count, later dismissed, alleged in substance that the defendant was wrongfully discharged from his employment and prayed damages therefor. The second count charged that a complaint was signed by an authorized agent of the defendant in the Municipal Court of Chicago without probable cause, whereby the plaintiff was charged with grand larceny; that the case was presented to the grand jury of the Criminal Court of Cook County and a "Not a True Bill" was returned. The plaintiff asked for both compensatory and punitive damages.

The plaintiff, Fred W. Brandt, Sr., was 60 years of age, married and had three adult children. He lived in Chicago 32 years. He had completed one year of high school. He had been employed by the defendant continuously for 28 years. He had a good work record and a good reputation among his fellow employees. The plaintiff's health and strength, including his ability to lift, was impaired when he was afflicted with carcinoma of the lung requiring surgical removal. Thereafter, he was assigned to light duties as "Order Car Man" by the defendant railroad in which employment he continued. On January

27, 1952 he was at work in the defendant's 59th Street Yard in Chicago. Prior to this time there had been numerous thefts of beer from cars while in the defendant's yard. About 11:30 a. m. a certain refrigerator car containing a shipment of Schlitz beer arrived in the yard en route from Milwaukee, Wisconsin, to Nassawadox, Virginia. Six double cases of beer containing 48 cans each were taken from the car. Jessup, foreman of the defendant's car repair shop, received an anonymous telephone call informing him that men had been seen loading cases of beer in an automobile just west of the viaduct of 59th Street. The license number of the automobile was also reported to him. Jessup went to the yard, broke the seal on the car, and found that it contained Schlitz beer. He telephoned these facts to the Company's downtown police office. Officer Braun and Captain Anspach, the defendant's employees, ascertained from the Chicago Police Department the name and home address of the owner to whom the license number had been assigned. They went to this address, found R. A. Marker and saw a double case of Schlitz beer. Marker was a switchman for the defendant. He told them he had purchased the beer on the way home from the yard for $2.00 from an unidentified man near the 59th Street viaduct. He voluntarily surrendered the beer.

The next morning Anspach ascertained that this beer was part of the interstate shipment. Lieutenant Flack, Assistant to Captain Anspach, telephoned the Federal Bureau of Investigation and Special Agent Tharp commenced investigation of the theft. Tharp, with Anspach or Flack, went to the home of car inspector Paul Dankert, an employee of the defendant, who had serviced the car on January 27. He denied knowing anything about the theft.

On Tuesday, January 29, Tharp and Flack went to the home of Fireman Bohlig, also an employee of the Company. Bohlig said he did not want to get involved but told them that he had been the fireman for the switch crew on the afternoon of January 27. That while the engine was standing in the yard he saw three men whom he could identify only as car inspectors; that he saw one tall man on top of the refrigerator car, one who was tall and heavy came up to the car, and one who was short got into the car and handed out three cases of beer to the two other men. The beer was carried to a black Buick automobile parked nearby, placed in the trunk and the automobile was driven off. That the right rear fender of this automobile was torn or ripped. Bohlig also reported that, after switching the beer car to a point near 59th Street, he saw the same three men again beside it, and that the short man re-entered the car and handed out two cases of beer to a fourth man, who carried the two cases west across the tracks at 59th Street. Tharp and Flack again went to Dankert's home and saw the right rear fender of his automobile was torn. On January 20 Tharp, Anspach and Flack interviewed Dankert at the defendant's 59th Street Yard Office. He signed confessions prepared by Anspach and Tharp. In Dankert's confession he admitted that Louis Conn, an employee of the Company, Fred Brandt, the plaintiff in this action, and himself agreed to take a case of beer; that he entered the car and handed the cases of beer to Conn and the plaintiff, and that they were placed in the trunk of his automobile; that they drove to the car shop locker room at 59th Street. Dankert stated that he resealed the car, but before doing so he got some beer for an employee by the name of "Bud". Tharp and Anspach then interviewed Conn who also signed statements, one prepared by Tharp and one by Anspach, each corroborating Dankert and also involving the plaintiff. He also stated that another employee by the name of Citro was connected with the theft. Conn and Dankert identified Marker, another employee, as "Bud" who obtained beer. On January 31, Citro also admitted that he was implicated in the theft. Tharp and Anspach interviewed the plaintiff. Brandt was confronted by

Conn and Dankert who read their confessions. He denied connection with the theft. He testified at the trial that he did sign a statement which was prepared by Anspach and read to him. It stated that he went to 56th Street where he met Paul Dankert and Louis Conn; that they were at the beer car. The door was open and Paul was just getting out of the car. There were three cases of beer on the ground on the east side of the car. There were two other men standing near the north end of this track. That he saw Paul and Louis carry the beer from the car and put the beer in the trunk of Paul's automobile. That he got in the front seat of the car with Paul and rode to 59th Street. That he did not make a report about the beer, although he knew that Paul and Louis had stolen 3 cases of beer from the car at 56th Street. He testified that he did not say this although it was in his statement, and that he thought the beer was to be "turned in". He also testified, and it was corroborated by Dankert's testimony, that he did not have any part in the taking of the beer, and that Dankert and Conn admitted that they were wrong in their statements that Brandt took part in the theft, but Captain Anspach refused to change the statements made by Conn and Dankert involving Brandt in the theft. Brandt further testified that he made his regular report and went home. On February 1 or 2 Brandt was again called to Anspach's office and again repudiated any part in stealing the beer, and Dankert told Anspach that the plaintiff's objections to the statement were correct. Conn was also called in and he corroborated the plaintiff. At the trial Anspach admitted that both Dankert and Conn had requested him to make corrections in their statements. Brandt's home, with his consent, was searched prior to February 8 by Tharp and no beer was found.

On February 8, Lieutenant Flack swore to a complaint for grand larceny before Judge Hartigan of the Municipal Court in Chicago. The plaintiff gave bond and was bound over to the grand jury without a hearing. The grand jury returned "Not a True Bill". He was later indicted by the federal grand jury for conspiracy with Dankert and Conn for unlawfully stealing the beer while it was in interstate commerce. He was tried on this charge without a jury and at the close of the plaintiff's evidence Judge Igoe, the trial judge, discharged him. His employment by the Pennsylvania Railroad was terminated, and since then he has had other employment at equal or better wages.

■ On these facts the defendant contends that there was probable cause as a matter of law. In other words counsel for the railroad insists that prior to February 8, 1952 the defendant's agent had "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense charged." Palmer v. Richardson, 70 Ill. 544, 546; Stueber v. Admiral Corp., 7 Cir., 185 F.2d 10. Of course, the facts must be taken in the light most favorable to the plaintiff in determining whether there was probable cause. At the time the defendant's employee, Flack, signed the complaint in the Municipal Court he and the defendant's other employees were aware of Brandt's good reputation; that he had been employed by the Company for a number of years; that his health and lifting ability were impaired and he had been given light duty; that he repudiated any part in the theft and he was corroborated in this by two of defendant's employees. The reasonable ground for the suspicion of Brandt's guilt and also the supporting circumstances are contradicted. The evidence in this case differentiates the issues of probable cause presented in Stueber v. Admiral Corp., supra. The facts upon which the defendant relied were disputed and where the evidence is conflicting "it is very clear that they must be settled by the verdict of the jury before the court can apply the law to them." Schattgen v. Holnback, 149 Ill. 646, 652, 36 N.E. 969, 970.

■■ The plaintiff was permitted to introduce into evidence the indictment for larceny marked "Not a True Bill" as returned by the grand jury of Cook County, and also the complete discharge order of Judge Igoe in the criminal case in the federal court. The defendant had admitted in his answer that the state court prosecution resulted favorably to the plaintiff, and also stipulated that there was an acquittal in the federal court. The defendant objected to the admission in evidence of these documents as they were immaterial to the issues in the case and would be prejudicial. There was no limitation on the effect of these documents. They were admissible only to prove a favorable termination of the prosecution and not to prove the plaintiff was not guilty. Knecht v. Lehr, 81 Ill.App. 208. These documents went to the jury to be used for any and all purposes. This was a close case on probable cause and the guilt or innocence of the plaintiff was not involved in that question. What was said in Skidmore v. Bricker, 77 Ill. 164, 167 is most applicable here:

> "If the record of acquittal was permitted to be read in evidence on the trial of this class of cases, a recovery could be had in almost every case of acquittal. Such a practice would deter all men from thus endeavoring to enforce the criminal laws of the State. The prosecutor would be compelled to secure a conviction or respond in damages for a malicious prosecution. This is not, nor can it ever be held to be, the law. Far better abolish the action for malicious prosecution, than adopt such a rule. Under it, no one would dare to prosecute, who was able to respond in damages."

The case must be reversed on this ground alone. Brown v. Smith, 83 Ill. 291; Gentzen v. H. M. Hooker Co., 173 Ill.App. 127.

■ It was also prejudicial to permit the plaintiff to inject into the malicious prosecution trial the evidence of the company trial wherein plaintiff's employment was terminated. It could only confuse the issues in this case. The plaintiff's count for wrongful discharge in his claim for relief had been dismissed. The issue of wrongful discharge was totally irrelevant here. Plaintiff had the option of proceeding on this issue in the district court for damages from wrongful discharge or pursuing the remedy provided by the Railway Labor Act. Title 45 U.S. C.A. § 153(i). Moore v. Illinois Central R. Co., 312 U.S. 630, 634, 636, 61 S.Ct. 754, 85 L.Ed. 1089.

The argument of plaintiff's counsel was inflammatory and preyed upon the minds of the jury to arouse passion and prejudice as evidenced by the amount of the verdict. The argument of plaintiff's counsel continuously emphasized over objection the importance of the failure of the defendant to obtain a conviction, which no doubt would confuse the jury on the question of probable cause. The compensatory damages proved were small. The effect of improper evidence and the argument of counsel seems to be reflected in the $60,-000 verdict, although the court properly instructed the jury on compensatory and punitive damages.

The judgment is reversed and the cause remanded to the District Court for new trial.

LINDLEY, Circuit Judge (concurring).

I agree that the judgment must be reversed, but I would go further. The record, in my opinion, discloses complete failure on the part of plaintiff to prove lack of probable cause on defendant's part. Rather, the evidence, even that of plaintiff, is convincing that defendant had more than probable cause to believe that plaintiff had participated in the theft. I would not only vacate the judgment, I would direct the district court to enter judgment for defendant.