**Hardie ROTHSCHILD, Plaintiff-Appellee and Cross-Appellant,**

v.

**The DRAKE HOTEL, INC., a corporation, Defendant-Appellant and Cross-Appellee.**

**Nos. 16324, 16325.**

United States Court of Appeals
Seventh Circuit.

June 3, 1968.

---

Eugene F. Welter, Chicago, Ill., Fred J. Freel, Stephen B. Millin, Kansas City, Mo., Matthew L. Salita, Chicago, Ill., for Hardie Rothschild, Sheridan, Sanders, Millin, Peters, Carr & Sharp, Kansas City, Mo., of counsel.

Jerome H. Torschen, Leo J. Doyle, Jr., Chicago, Ill., for Drake Hotel, Inc.

Before MAJOR, Senior Circuit Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

MAJOR, Senior Circuit Judge.

This diversity action was commenced August 26, 1966, for the recovery of compensatory and punitive damages for false imprisonment, assault and malicious prosecution occasioned by the alleged wrongful and malicious acts of the Drake Hotel on August 6, 1965, in assaulting, imprisoning and prosecuting plaintiff for defrauding an innkeeper. A jury returned a general verdict in favor of plaintiff, awarding damages in the amount of $400,000. The trial court, in response to defendant's motion for judgment n. o. v. or for a new trial, gave plaintiff an election between filing a remittitur

reducing the award to $75,000, or a new trial. Plaintiff filed a remittitur under protest, reserving the right to appeal, following which the trial court, on May 7, 1967, reduced the jury award to $75,000, entered judgment in favor of plaintiff for that amount and otherwise overruled defendant's motion.

Both parties appeal. Defendant seeks reversal on the ground that the court erred in denying its motion for a judgment n. o. v. or, in the alternative, in denying a new trial. Plaintiff, in what is characterized as a cross-appeal, contends that the court arbitrarily abused its discretion in directing the remittitur, that the judgment entered pursuant thereto should be set aside, and that the trial court be directed to enter a judgment in her favor in the amount of the jury award.

While plaintiff alleged three separate causes of action in her complaint, the case is presented here as one for malicious prosecution, and we shall so treat it.

It is significant to note in the beginning that while the trial was lengthy, resulting in a voluminous record, no error is assigned relative to the admission of testimony or to the court's instructions to the jury; in fact, the issues argued here present in the main questions of law. The only exception to this statement is defendant's contention that the extraordinarily large verdict was caused by the repeated references by plaintiff's counsel to her acquittal in the criminal proceeding instituted against her by Drake. Otherwise, the thrust of defendant's attack is directed at the court's denial of its motion for a directed verdict and the court's refusal to enter a judgment n. o. v. in its favor or, in the alternative, to grant a new trial.

Plaintiff's main contention is that the court "arbitrarily abused its discretion in directing a remittitur," and in its refusal to enter a judgment in her favor in accordance with the jury verdict.

Both parties on brief, particularly plaintiff, favor us with a lengthy and detailed statement of the alleged facts. It appears to us that defendant's statement, as well as its argument, proceeds on the basis of evidence most favorable to it, thereby ignoring the well established rule that on appeal this court must accept as true the facts which plaintiff's evidence tends to prove and draw against defendant on its motion for directed verdict all reasonable inferences favorable to plaintiff. Brandt v. Pennsylvania R. Co. (CA 7), 231 F.2d 848, 851, 57 A.L.R.2d 1078 and Stueber et al. v. Admiral Corp. (CA 7), 171 F.2d 777, 779.

Plaintiff, a resident of Kansas City, Missouri, with three minor children, was separated from her husband and engaged in a controversy with him as to their custody. During the latter part of July 1965, she planned a vacation with her 9-year-old daughter, Jane, which was to include a visit to Chicago at the Drake Hotel and a boat trip on the Great Lakes from Duluth, Minnesota, to Buffalo, New York, and return. Reservations for the boat trip and at the Drake Hotel were made by the Automobile Club of Kansas City.

On Saturday, July 31, 1965, steamship tickets were mailed to plaintiff at the Drake Hotel. On Sunday afternoon, August 1, plaintiff and her daughter, Jane, pursuant to the reservation which had been made for her, registered at the hotel. She informed the room clerk at the time of registration that she would leave the hotel around 7 p. m. Tuesday, August 3. At that time and subsequently, she inquired as to the steamship tickets, but for some unexplained reason they were never received and she cancelled her plans for the boat trip.

The testimony as to the happenings on Wednesday, Thursday and Friday is in much dispute and plaintiff's case rests chiefly upon her testimony, corroborated to some extent by her daughter. Plaintiff testified that after she decided to cancel the boat trip, she extended her stay at the Drake until the end of the week and was assured by a clerk that defendant would be happy to have her remain. In fact, she testified that on

Thursday afternoon arrangements were made, at the suggestion of defendant's desk personnel, for her to move to another room on Friday. Defendant's credit manager testified that on August 5 (Thursday), he put a statement of itemized charges in an envelope and gave it to a bell man for delivery to plaintiff's room. On the following day, not having heard from her, he sent a second note to plaintiff's room, advising her that bills were due on presentation. The credit manager admitted that he did not regard the notes to plaintiff as demands for immediate payment but as a "subtle way of asking the guest to contact me or to pay."

On Friday morning, plaintiff, in response to the notes from the credit manager, composed two statements and placed them in separate envelopes.[1] She took the first statement to the front desk and the second to the credit manager, who after reading it asked plaintiff to be seated so that they might discuss her bill. This she refused to do, and abruptly left. The strange and unresponsive nature of the notes written by plaintiff and the attitude which she displayed toward the credit manager are material because they in the main furnished the basis for the controversy which took place shortly thereafter.

The incident just related was reported by the credit manager to a Mr. Hughes, the hotel security officer, and from then on most of the controversy which culminated in plaintiff's arrest was between her and Hughes. Because of the death of Hughes, the hotel was deprived of his version of what took place.

Plaintiff testified that in response to a telephone call from Hughes she met him on the seventh floor and that he in-

formed her she had 20 minutes to leave the hotel. He followed her into her room, where he remained for about two hours and continued to insist that she leave the hotel immediately. During that time the credit manager entered the room, closed the door and stood in the entry way in front of the door so that plaintiff could not leave the room. Hughes would not permit plaintiff to call her lawyer and grabbed the phone from her hand. Plaintiff and her daughter finally got out of the room, and Hughes then told her she could have all afternoon to pack and leave. When plaintiff attempted to use the elevator, the operator was instructed by Hughes not to move it.

Hughes left plaintiff and her daughter in custody of another person but soon returned, accompanied by two police officers. While plaintiff testified that she was never requested to pay her bill, the two officers, the credit manager and several other employees of Drake testified that she was asked to pay her bill, if only to avoid the embarrassment of arrest. The evidence is not in dispute that plaintiff took the position that her bill could be paid from the refund she expected from her cancelled boat trip or at the expiration of her stay, which she testified had been extended by the hotel to the end of the week.

Upon plaintiff's refusal to pay or to make any arrangements therefor, the police officers at the request of Hughes and on his promise to sign a complaint placed plaintiff under arrest, without a warrant. She and her daughter were taken by the officers to a police station, where she was turned over to Officer Anderson for interrogation. Shortly thereafter, Hughes appeared and signed a complaint charging her with defrauding an inn-

---

[1.] Said notes read as follows:

(1) "Sir: The enclosed statement can certainly be returned for further study. Kindly put it into room box and I shall pick up when I return later this afternoon. I feel sure those at the desk will know my new room number. Cordially, Hardie Rothschild."

(2) "Enclosed card really not necessary. I am aware of any payment in-

curred by a guest of any hotel. Extensive travel, domestic and foreign, rules vary. But your reminder bills are not standard operating procedure in the Western Hemisphere or elsewhere. I am at your service for discussion after my daughter and I return later this afternoon. The above reply is that the notes are self-explanatory. Cordially, Hardie Rothschild."

keeper in violation of Chap. 71, Sec. 4a, Illinois Revised Statutes. Anderson testified as a plaintiff's witness that she was arrested for failure to pay a hotel bill and that he told her the amount. She again insisted that the amount of the bill could be deducted from the refund she expected from the cancelled boat tickets. While she was in custody, the daughter was returned to the father in Kansas City.

Plaintiff was first taken to the Women's Lockup, and on Saturday to the Cook County Jail. On Saturday morning she was taken to the Criminal Court, where the case against her was called but continued at the request of the Drake because of the illness of Hughes. She was returned to the County Jail and confined until released on Monday evening, when an aunt furnished bond. We think it unnecessary to relate the sordid story told by plaintiff as to the mistreatment which she received during her period of commitment.

On September 30, 1965, plaintiff came to Chicago to defend herself against the criminal charge, bringing her counsel from Kansas City. After a bench trial during which witnesses for the Drake, including Hughes, testified, the court found plaintiff not guilty. After her discharge, plaintiff applied directly to the steamship company for a refund for her cruise tickets, which was allowed. Also after her discharge, she paid her hotel bill, the amount of which was never in dispute, with her personal check.

Of the numerous points advanced by the parties relative to defendant's contention that the court erred in its refusal to direct a verdict in its favor, there clearly emerges the final and conclusive issue as to whether defendant had probable cause for having plaintiff arrested and prosecuted. In support of its contention, defendant places much reliance upon certain provisions of the Illinois Statute, one of which plaintiff was charged with violating. Among other things,

plaintiff argues that the statutory provision relied upon by defendant is unconstitutional. No such issue was raised in the trial court and, in our view, need not be resolved here. The trial court correctly instructed the jury relative to the statutory provisions in issue. Our judgment in this respect is buttressed by the fact that neither of the parties here contends otherwise.

The court instructed that at the time of the incident in question there were in full force in the State of Illinois two applicable sections: Section 1, "Any person who shall * * * obtain food, lodging or other accommodation at any hotel with intent to defraud the owner or keeper thereof, shall be guilty of a misdemeanor," and Section 2, "Proof that lodging, food or other accommodation was obtained by false pretense, or by false or fictitious show or pretense of baggage, or that the party refused or neglected to pay for such food, lodging or other accommodation on demand or that he or she absconded or left the premises without paying or offering to pay for such food, lodging or other accommodation or that he or she surreptitiously removed or attempted to remove his or her baggage, shall be prima facie proof of the fraudulent intent mentioned in section one." [2]

Following this description of the statutory provisions, the court charged, "Now, if you decide that the plaintiff violated the statute on the occasion in question, that you may consider that fact, together with all of the other facts or circumstances in evidence, in determining whether or not the defendant in this case had probable cause for having the plaintiff arrested and prosecuted."

The court further charged, " * * * that mere proof that a person refuses or neglects to pay for accommodations on demand without further proof that the debt was fraudulently incurred or that the neglect or refusal to pay was in any way fraudulent is insufficient to warrant

2. The two statutory provisions referred to by the court as Sections 1 and 2 are taken from Sections 31 and 32, Illinois Rev.Stat., Ch. 71.

a conviction under this statute; however, the refusal to pay for accommodations on demand, if you find there was such a demand and refusal, may be considered by you along with all of the other facts and circumstances in evidence in determining the issue of whether the plaintiff had any fraudulent intent to defraud the defendant in this case."

Defendant stresses the point that plaintiff at the time of her arrest failed or neglected to pay her bill. We agree, notwithstanding plaintiff's testimony to the contrary, that the proof overwhelmingly supports the premise that she did fail and neglect to pay. Even so, as the court instructed the jury, such neglect or failure did not in itself furnish a legal basis for probable cause that she intended to defraud. Moreover, the evidence is in dispute as to when she was obligated to pay. Certainly the hotel accepted her as a registered guest on Sunday, for a period extending until Tuesday evening. There is proof that on Wednesday she was promised by a clerk that she would be transferred to another room and that she could stay until the end of the week. Defendant's credit manager admitted that the demand for payment was a "subtle way of asking the guest to contact me or to pay." Plaintiff told the credit manager in her note that she would discuss the bill with him later and advised him of her impending change of rooms. When she came to see him on Friday, he told her, "Please pay your bill when you leave, Mrs. Rothschild."

We have read all of the evidence as shown in the appendices presented by the respective parties and have no doubt that the unfortunate occurrence could easily have been avoided with the exercise by either plaintiff or Hughes of a modicum of common sense. At the time of her arrest plaintiff had in her possession $35.00 in cash and $150.00 in traveler's checks. She also had a checking account in a Kansas City bank, upon which she could have written a check. Thus, she was in a position either to pay or to establish her credit. It is evident, however, that she was determined not to pay until she left the hotel, and that she would not leave until the end of the week. On the other hand, Hughes was determined to remove her from the hotel at once and, as a consequence, caused her arrest. In this connection it must not be overlooked that there was proof that her period of stay in the hotel had been extended and that she had been told that she could pay when she left. Thus, there was a question as to whether she was obligated to pay at the time requested by the hotel. Even if she had been, her refusal would not of itself, as the court instructed the jury, have furnished probable cause for her arrest on a charge of intent to defraud.

We conclude and so hold that the evidence on the issue of liability presented a question for the jury and that the court properly denied defendant's motion for a directed verdict.

The sole error urged by defendant relative to the trial of the case is stated on brief as follows, "The repeated use before the jury by plaintiff of her acquittal in the criminal proceedings was improper and prejudicial." Plaintiff asserts, and we find nothing in the record to the contrary, that this issue was first raised by defendant in support of its motion for a new trial. True, defendant on several occasions advanced the point that the record of plaintiff's acquittal on the criminal charge was not admissible, and the court in response to defendant's objection stated, "My ruling is that the evidence is admissible only to show the termination of the prior litigation. The jury will be instructed that it does not and should not be considered by them on the question of probable cause. I so intend to tell the jury."

In conformity with this ruling which the court reiterated at different times during the trial, the jury was charged, "This evidence should be considered by you only to show the favorable termination of the criminal proceeding as one of the elements of the plaintiff's action and has no bearing as you sit there now on the jury, has no bearing on the question of probable cause or of evidence of

malice because these are questions for you to decide. These matters, the question of want of probable cause or evidence of malice are to be determined by you from the other evidence introduced during this trial, independent of the innocence or the guilt of the plaintiff as determined in the criminal proceeding." Thus, the reason for the admission of this testimony and the purpose for which it could be used by the jury were specifically stated by the court. The propriety of the law thus announced is not here challenged, and defendant is in an awkward position to argue that the record of the criminal proceeding was erroneously admitted.

Defendant's reliance upon our decision in Brandt v. Pennsylvania Railroad Co., 231 F.2d 848, in which we reversed a judgment for the plaintiff in a suit for malicious prosecution, is misplaced. Referring to the admission of testimony as to plaintiff's discharge in a criminal case, we stated (page 852):

> "The defendant objected to the admission in evidence of these documents as they were immaterial to the issues in the case and would be prejudicial. There was no limitation on the effect of these documents. They were admissible only to prove a favorable termination of the prosecution and not to prove the plaintiff was not guilty. Knecht v. Lehr, 81 Ill.App. 208. These documents went to the jury to be used for any and all purposes."

In that case, contrary to the situation here, there was no limitation on the effect to be given the evidence. Also, in that case such evidence went to the jury "to be used for any and all purposes," while here the jury was specifically advised as to the reason for its admission and the purpose for which it could be used.

■ Defendant's principal attack, however, on this phase of its presentation is not that the evidence of plaintiff's acquittal in the criminal proceeding was erroneously admitted, but that it was im-

properly used by plaintiff's counsel, particularly in his closing argument to the jury. On brief, defendant sets forth six different occasions during such argument when reference was made by plaintiff's counsel to her acquittal. We think the argument thus made is subject to criticism but we are faced with the proposition that it was made without objection and thus with no opportunity to the trial judge to rule on its propriety. It is a well established rule that objections to the closing argument not made in the trial court cannot be considered for the first time on appeal. Crumpton v. United States, 138 U.S. 361, 364, 11 S.Ct. 355, 34 L.Ed. 958; United States v. Socony-Vacuum Oil Co., Inc. et al., 310 U.S. 150, 238, 60 S.Ct. 811, 84 L.Ed. 1129.

■■ Defendant, apparently in an effort to escape its dilemma on this score, argues that the court was fully aware of its position with reference to plaintiff's acquittal and that there was no occasion for a repetition of objections thus made. The fallacy of this position is that the objections to which it refers were directed, as already shown, to the admissibility of the evidence. Defendant's criticism of plaintiff's argument to the jury is not that the admission was referred to but the improper use which was sought to be made of it. Objection to its admission no matter how often made does not preserve for review defendant's belated attack upon its use in plaintiff's closing argument. On the record before us, we hold that the trial court did not abuse its discretion in its denial of a motion for a new trial on the basis of the alleged improper argument by plaintiff's counsel.

The trial court, in ruling on defendant's motion for judgment n. o. v. or, in the alternative, for a new trial, among other things stated:

> "I wish to say that this was an unusual case with a bizarre set of circumstances, resulting in a record—a record-breaking verdict. I find no problem in the conclusion reached by the jury that the defendant improperly and

without probable cause had the plaintiff arrested for the non-payment of her hotel bill; nor do I have any problem with the fact that the jury included in its verdict exemplary damages against the defendant hotel.

"After reviewing each of the numerous assignments of error, I find them all to be without merit except one—the size of the verdict."

The court stated that the jury "reached its verdict on an emotional rather than on a legal basis," and

"Granting that the plaintiff suffered a nerve-shattering experience by being confined in jail for a period of three days and being temporarily separated from her daughter, and that some after-effects of this continued on her return to Kansas City, there can be no reasonable basis for assessing damages in the amount of this verdict."

The court further stated "that no jury could properly assess damages in this case in an amount to exceed $75,000," and

"If the plaintiff will agree to accept a verdict in this amount within ten days, and file a written election to do so, judgment will be entered on the verdict in that amount.

"If the plaintiff does not elect to accept a remittitur, within the time specified, the defendant will then be granted a new trial."

In compliance with the court's suggestion, plaintiff filed her remittitur and motion to enter judgment accordingly in her favor in the amount of $75,000 and costs.

■ In our judgment, the reasons given by the trial court for its final disposition of the case are not properly the subject of serious criticism by either of the parties. As previously shown, the case was properly submitted to the jury and there was adequate support for its verdict against defendant on the issue of liability. Defendant's motion for a judgment n. o. v. was properly denied.

Our evaluation of the factual situation leads us to the definite conclusion that the damages awarded by the jury verdict were so grossly excessive that a new trial should have been allowed, absent plaintiff's remittitur by which the damages were reduced to $75,000.

■ Plaintiff makes the feeble argument that the order of remittitur offering her the opportunity to accept a reduction in the amount of the award to $75,000, or a new trial, was an arbitrary abuse of the trial court's discretion which this court should set aside, reinstating plaintiff's original award of $400,000. We think the action of the court in this respect was not an arbitrary abuse of discretion, but more important is the fact that its action is not subject to review by this court.

This precise point was decided by this court adversely to the plaintiff in Dorin v. Equitable Life Assurance Society of the United States, 7 Cir., 382 F.2d 73, 78, decided June 29, 1967, wherein we held that the plaintiff had "the choice of taking judgment at the figure set by the judge, or attempting the recovery of a greater amount by a new trial." We held that this court was without authority to review the plaintiff's cross appeal. Plaintiff here attempts to distinguish Dorin on the basis of the court's statement "that no jury could properly assess damages in this case in an amount to exceed $75,000." Plaintiff argues that this was a final order and "deprived her of a jury trial in a second jury trial in this cause." We think this purported distinction is without merit. It is obvious that the court in the quoted statement was referring to the record as made in the case before it. Certainly it did not intend to limit the amount of plaintiff's recovery if she rejected the remittitur and took a new trial. In any event, anything the court said or did in this case could not have controlled or limited the amount of plaintiff's recovery at the hands of another jury.

For reasons stated, plaintiff's cross appeal, seeking to set aside the order of

remittitur and to reinstate the judgment in the amount of $400,000, is dismissed, and the judgment entered against the defendant in the amount of $75,000, is affirmed.