**Robert J. Flannery and William Moore, Plaintiffs-Appellees, v. Arthur C. Allyn, Jr., Defendant-Appellant.**

**Gen. No. 49,147.**

First District, Third Division.

March 26, 1964.

John T. Garrity, of Chicago, for appellant.

John J. Burns, Jr., of Chicago, for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from judgments entered on verdicts in favor of each of the plaintiffs in a libel action, after the court had instructed the jury as to defendant's liability. The plaintiffs were police officers of the Chicago Park District at the time of the occurrence complained of.

On July 21, 1958 the defendant wrote and sent the following letter to Chief George Otlewis of the Chicago Park District:

■■■■■■■■

"Chief George Otlewis
Police Division
Chicago Park District
Administration Building
425 East 14th Boulevard
Chicago 5, Illinois

Prior to noon on March 23rd on the Outer Drive, the officers driving Police Car #920, license #M7716, solicited a check from my daughter, a copy of which is enclosed, when the car in which she was riding was stopped, for 'speeding.' When she asked the officers to whom the check should be made, they said, 'cash, what else.' The check was pre-dated March 22nd because the 23rd was a Sunday. Further, this solicitation was done in front of witnesses.

I regret having to advise you of this situation at such a late date, but you will note that the check was not put through the bank until the 31st, and since my daughter is away at school, and we just recently returned from a trip to Hawaii, there was no opportunity to present this matter until now. I expect disciplinary action to be taken promptly.

The newspapers have not been advised, and I have no intentions at the present time of doing so.

A. C. Allyn, Jr. (signed)

A. C. Allyn Jr.
djd"

The complaint alleged that the defendant wrote the letter maliciously, intending to destroy the good names of the plaintiffs and charge them with being dishonest and crooked. That as a result of the letter they were shunned and injured in their reputation.

The facts occurring prior to the sending of the foregoing letter are briefly these:

In July, 1958, the defendant saw a cancelled check signed by his daughter for $15 payable to cash and bearing the deposit stamp of a tavern but no other endorsement. He was at that time checking his daughter's bank statement. He asked his daughter about the check and she told him that she was riding in a car on Lake Shore Drive, which was stopped for speeding, and that she gave the police officers a check for $15.

At the trial these facts were brought out:

The driver's name was Paul Power. With him were two young ladies, one of them being Dorothy Allyn. The driver was charged with exceeding the speed limit and was given a ticket. He was informed a $25 bond was required. The driver did not have his driver's license with him. The driver had only $10. Miss Allyn asked if they would take a check for $15. Officer Flannery told her to make out the check to cash and he would give her $15 cash to avoid inconvenience. She gave the money to the driver who was arrested for speeding, and he, in turn, gave $25 to the sergeant at the police station.

When this letter was received by Chief Otlewis it was read by him and went down the chain of command for investigation. Many police officers in the police station who were not assigned to investigate the matter read the letter. There is no question that there was publication of this letter and the persons who read the letter knew that it referred to the plaintiffs.

The defendant, when he sent the letter of July 21, 1958, knew only that his daughter had given a police officer a check for $15, and he assumed the worst.

Subsequently, on August 28, 1958, after the defendant had discovered the facts concerning the incident

he wrote the following letter to Chief George Otlewis of the Chicago Park District:

"Chief George A. Otlewis
Chicago Park District
Administration Building
425 East 14th Blvd.
Chicago 5, Illinois

Please refer to my letters to you dated July 21st and July 28th of this year.

I have now had an opportunity to discuss the matters contained in those letters in detail with the driver of the vehicle. It is now clear that the apparent infraction of the rules by your officers arose from a failure on the part of the driver of the vehicle, and also on the part of the officers not to disclose to my daughter the nature of the solicitation of her check. The officers involved did generously offer to the driver of the vehicle to cash a check to permit the driver to put up the necessary bond. The bond was put up and a receipt was given therefore.

I do not think that it was wise for the officers to cash a personal check, but I must say that it was quite generous of them to do so. Thank you for your cooperation in this regard.

(s) A. C. ALLYN, JR.

A. C. ALLYN, JR.
djd
cc: Captain John Northen"

The plaintiffs contend that the communication of July 21, 1958 was libelous per se.

In 33 ILP, Slander and Libel, section 26, it is said:

"Any language which imputes want of integrity, a lack of due qualification, or a dereliction of

312

duty to an officer or employee, whether it is written or spoken, is actionable per se."

In the case of Clifford v. Cochrane, 10 Ill App 570, the court said on page 574:

"The general rule in relation to the speaking of words of one in a particular calling may be stated as follows: any words spoken of such a person in his office, trade, profession or business, which tend to impair his credit, or charge him with fraud, or indirect dealings, or with *incapacity,* and that tend to injure him in his trade, profession, or business, are actionable, without proof of special damage. (Citing cases.)"

The case of Zurawski v. Dziennik Zjednoczenia Pub. Corp., 286 Ill App 106, 2 NE2d 956, held that to falsely charge one with the commission of a crime is libelous per se.

In Hotz v. Alton Tel. Printing Co., 324 Ill App 1, 57 NE2d 137, a newspaper article charged that by manipulation the canvassing board of Madison County had managed to put one candidate into office even though another candidate had received more votes. At page 6 the court said:

"Defamatory words which impute unfitness to perform the duties of an employment of profit, or want of integrity in the discharge of its duties, are actionable in themselves."

That case also held that in determining whether a published article is libelous per se, the words must be taken in the same sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary and common acceptance.

In the case of Cowper v. Vannier, 20 Ill App2d 499, 156 NE2d 761, the court said on page 501:

313

"The rule is, that written or printed words are libelous per se, if clearly defamatory on their face and are unambiguous and incapable of an innocent meaning. Dowie v. Priddle, 216 Ill 553; White v. Bourquin, 204 Ill App 83; Dilling v. Illinois Publishing & Printing Co., 340 Ill App 303. If the words are libelous per se, it is not necessary to allege or prove special damages, as both malice and damages are presumed. White v. Bourquin, supra. Where the words are ambiguous or equivocal in meaning, the question of the meaning to be ascribed to them is for the jury. Ogren v. Rockford Star Printing Co., 288 Ill 405."

The law is that where the language is unambiguous and capable of only one meaning, it presents a question of law to be determined by the court as to whether or not it is libelous per se.

■ ■ In the instant case, the letter could be interpreted in only one reasonable way. The defendant was accusing the officers of soliciting a bribe, which is not only an imputation of want of integrity in the performance of their duties, but an imputation of the commission of a crime.

The crime of bribery as set forth in the Illinois Statute existing at the time of the occurrence herein reads in part as follows:

"Whoever corruptly, directly or indirectly, gives any money or other bribe, present, reward, promise, contract, obligation or security for the payment of any money, . . . to any judge, . . . or other officer, ministerial or judicial, . . . to perform any duty of him required, with partiality or favor, or otherwise than is required by law, . . . the person so giving, and the officer so receiving any money, bribe, present, reward, . . . shall be deemed guilty of bribery, . . . ."

Ill Rev Stats 1957, c 38, § 78.

Under the prevailing case law the letter is therefore, standing alone, libelous per se, and unless it is subject to an absolute or qualified privilege, malice is inferred.

The defendant claims that the letter is only actionable per quod because an innuendo is necessary to show that the letter was defamatory. Since there can only be one interpretation of the meaning of the letter we do not believe that this position is tenable. Since we conclude that the letter, standing alone, is libelous per se, we come to the question of whether or not it is subject to any privilege.

In Cook v. East Shore Newspapers, Inc., 327 Ill App 559, the court said at page 577, 64 NE2d 751:

"An absolutely privileged communication is one in respect of which by reason of the occasion on which or the matter in reference to which it is made no remedy can be had in a civil action. This class is narrow and is practically limited to legislative and judicial proceedings and other acts of State, including communications made in the discharge of a duty under express authority of law, or to heads of the executive departments of the State, and matters involving military affairs. A publication which is conditionally or qualifiedly privileged is one made in good faith on any subject matter in which the person publishing has an interest, or in reference to which he has a duty if made to a person having a corresponding interest or duty, even though it contains matter which without this privilege would be actionable. The essential elements of the conditionally privileged communication are good faith and interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and published in a proper manner and to proper

315

parties. Such privileged publications lose their character as such on proof of actual malice. (33 Am Jur 124, 125, 126, chapter on Libel and Slander, par 126 and 127; Krumin v. Bruknes, 255 Ill App 503, 507.)"

In Iddings v. Houser, 237 Ill App 236, the court at page 242 quoted the following general rule with approval:

" 'Where a party makes a communication and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice.

" 'The duty under which the party is privileged to make the communication need not be one having the force of a legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.' "

In Judge v. Rockford Memorial Hospital, 17 Ill App 2d 365, 150 NE2d 202, one of the defendants was the Director of Nurses at the hospital. Plaintiff was a private duty nurse, a member of the Nurses' Professional Registry, Rockford. She was at the time of the allegedly libelous communication employed by the hospital. When plaintiff completed the case on which she was working at the hospital, defendant called the registry and asked that the plaintiff not be assigned to the hospital in the future. In response to a request by the Grievance Committee of the Registry, defendant wrote a letter in which she set forth certain ir-

316

regularities in plaintiff's record keeping regarding narcotics, and stated while plaintiff was on duty narcotics disappeared on three different occasions. The court held that this was a qualifiedly privileged communication. The court said on page 376:

"A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable: 33 Am Jur, p 123. We believe, under the circumstances, that the letter in question was written on a privileged occasion and is qualifiedly or conditionally privileged. Where circumstances exist, or are reasonably believed by the defendant to exist, from which he has an interest or duty, or in good faith believes he has an interest or duty, to make a certain communication to another person having a corresponding interest or duty, and the defendant is so situated that he believes, in the discharge of his interest or duty or in the interests of society, that he should make the communication, and if he makes the communication in good faith, under those circumstances, believing the communication to be true, even though it may not be true, then the communication is qualifiedly or conditionally privileged, even though the defendant's interest or duty be not necessarily a legal one but only moral or social and imperfect in character: 33 Am Jur, p 124; 33 Ill L and P, pp 390–391. . . . In the absence of actual malice, a communication may be qualifiedly privileged, if the other essential elements are present, even though it is not true, and even though it charges a crime, but a communication loses its character as privileged and is actionable upon proof of actual malice: 33 Am Jur, p 126; 33 L and P, p 392. Both the person by whom and the person to whom the communi-

317

cation is made must have an interest or duty in respect of the matter in order to render it a qualifiedly or conditionally privileged communication: 33 Am Jur, p 127."

The foregoing language is applicable to the case at bar.

■ The rule is not that the communication itself is privileged, but that the circumstances or the occasion under which it is made, make it qualifiedly privileged. In the case of a communication which is libelous per se, the law imputes or infers malice to the words. In the case of a qualifiedly privileged communication, the circumstances or occasion are such that one could not reasonably say that the words themselves are so harsh as to indicate malice. The circumstances or the occasion rebut the inference of malice which is raised by the words themselves, thus destroying a necessary requisite to a cause of action unless actual malice can be affirmatively shown.

In the case of McDavitt v. Boyer, 169 Ill 475, 48 NE 317, the court held that privileged communications constitute an exception to the general rule, that the utterance of actionable words implies malice, and that such privileged communications are presumed not to be malicious. The law does not imply malice when the injurious communication is privileged. In such cases, the occasion on which the utterances are made, prevents the ordinary inference of malice. The court in that case further pointed out that when a communication is shown to be privileged, the burden of proof is on the plaintiff to show actual malice on the part of the defendant, and that communications within the privilege are not actionable merely because they are false and defamatory, but express malice must be shown.

■ The letter of July 21, 1958 in the instant case falls within the category of qualifiedly privileged com-

munications. The defendant had an interest, as does every citizen, in the maintenance of an efficient Police Department, free from corruption. The defendant did not know the facts at the time he wrote the letter, but believed that the plaintiffs had solicited a bribe and were derelict in their duty, and under these circumstances it could be said that it was his moral duty to report apparent irregularities in the conduct of the local law enforcement officers. The communication was directed to the proper party, one having a duty or interest corresponding to that of the defendant. It is the responsibility of the Police Chief to investigate instances of apparent misconduct by his subordinates and to take appropriate disciplinary action where necessary.

While a qualified privilege is not affected by the truth or falsity of the letter if presented in good faith, for justifiable purposes, and to the extent warranted by the proper purpose, nevertheless, this rule presupposes an absence of malice. Judge v. Rockford Memorial Hospital, 17 Ill App2d 365, 150 NE2d 202; Young v. Richardson, 4 Ill App 364; Ambrosius v. O'Farrell, 119 Ill App 265; Jamison v. Rebenson, 21 Ill App2d 364, 158 NE2d 82.

In a case where there is a qualified privilege and malice is therefore not inferred, the burden of proving malice is upon the plaintiff, and this must be proven to the satisfaction of the jury. This case must be retried because we hold that the letter was qualifiedly privileged, and therefore the jury must determine whether or not there was actual malice on the part of the defendant. The jury in this case, of course, did not determine the question of malice because the court had limited the jury to a consideration of damages only.

In the case of Gassett v. Gilbert, 6 Gray (Mass) 94, 54 ALR 1149, it was said:

319

"The sole duty of the court, therefore, in such cases, is to determine whether the occasion, in the absence of actual malice, would justify the publication. If so, then it is incumbent on the plaintiff to prove the existence of malice, in order to sustain his action; and this must be shown to the satisfaction of the jury, whose exclusive province it is to pass upon the question. But it is not necessary to prove it by extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, and even from the terms of the publication itself."

The plaintiffs in this case have raised the point that the defense of qualified privilege was not properly preserved. Upon examination of the pleadings and the post-trial motion, we are satisfied that the question was properly preserved for review.

The plaintiffs also, in this case, filed a motion to dismiss the appeal for violation of Rule 6, of the Appellate Court, which motion was taken with the case. Rule 6 requires counsel for appellant to prepare a fair and adequate abstract of record. The record in this case consisted of 436 pages. Appellant filed an abstract of 44 pages, and failed to abstract several material parts of the record.

In the case of Gribben v. Interstate Motor Freight System Co., 38 Ill App2d 123, the court said on page 127, 186 NE2d 100:

"The appellants cannot sidestep the obligation of filing a sufficient abstract because Rule 6 permits the appellee to file an additional abstract. . . . the initial responsibility of an appellant never shifts to the appellee, and the latter is never compelled to do what the former should have done."

The abstract in this case was meager and counsel for appellant is hereby cautioned, in the future on

appeal to this court, to present a more adequate abstract. However, the court has read the record in this case and the motion is denied.

The judgments are hereby reversed and the cause remanded to the trial court with directions to vacate the judgments entered herein, to grant a new trial, and for such further proceedings as are not inconsistent with the views expressed herein.

Reversed and remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.