MOVIBLE OFFSHORE COMPANY, Appellant,

v.

Arthur Lee OUSLEY, Appellee.

Arthur Lee OUSLEY, Appellant,

v.

MOVIBLE OFFSHORE COMPANY, Appellee.

No. 21829.

United States Court of Appeals Fifth Circuit.

June 8, 1965.

---

1. There is a discrepancy of some $10 in the computation of this balance which we do not attempt to resolve.

J. J. Davidson, Jr., Davidson, Meaux, Onebane & Donohoe, Lafayette, La., for Movible Offshore Co.

Bob F. Wright, Domengeaux & Wright, Lafayette, La., for Arthur Lee Ousley.

Before WOODBURY,* JONES and GEWIN, Circuit Judges.

WOODBURY, Circuit Judge:

Mobil Oil Corporation owned a fixed oil well drilling platform located 40 odd miles out in the Gulf of Mexico off the Louisiana coast known as Platform A in Block 131 in the Vermillion Area. It entered into a contract with Movible Offshore Company to conduct drilling operations on its platform pursuant to which Mobil Offshore agreed to move its derrick or drilling rig from another

---

* Senior Judge of the First Circuit, sitting by designation.

similar platform in the same area to Platform A. Movible Offshore entered into a contract with Dale Hart, Inc., a rig building contractor, to dismantle and re-erect its rig. After Dale Hart had dismantled the rig on the other platform Movible Offshore moved it and the substructure on which it rested by barge to Platform A. In the course of being unloaded by derrick from the barge, half of the substructure fell striking a corner of Platform A and falling into the sea. It was recovered and found badly damaged. Movible Offshore took the damaged half of the substructure to its yard on shore, rebuilt it, and returned it to Platform A where it was placed beside the undamaged half on the parallel skid beams built into the platform for the purpose and the two halves were then united by a number of large steel pins driven through prefabricated holes in some five steel beams. Dale Hart's crew of riggers, one of whom was the plaintiff, then undertook to erect the derrick on the substructure as set in place by Movible Offshore.

There is evidence that as the work progressed increasing and unusual difficulty was encountered in bolting the various parts of the derrick together because the bolt holes did not fall readily into alignment. The plaintiff's injury occurred while he was attempting to align the bolt holes in two top member pieces of the derrick so that he could fasten them together. To do this he was using a tool customarily used for the purpose by riggers known as a "spud wrench" which has open jaws at one end and a tapering handle eighteen to twenty-four inches long. He inserted the handle of his wrench in two holes he was trying to align and was applying heavy pressure on the other end of the wrench with his foot when the wrench slipped out of the holes and his leg kicked out straight causing, according to the medical testimony, injury to his knee to the extent of about 40% loss of the effective use of the joint.

Trial by jury in the court below resulted in a verdict for the defendant Mobil Oil Corporation but for the plaintiff against Movible Offshore. In response to interrogatories the jury found that Movible Offshore Company had been causally negligent but that Mobil Oil Corporation had not and that the plaintiff's own negligence had contributed 30% to his injury. On the basis of these findings the jury awarded the plaintiff $159,600 in damages against Movible Offshore. The court denied Movible Offshore's motion for judgment notwithstanding the verdict but granted its alternative motion for a new trial only insofar as damages were concerned unless the plaintiff would remit $44,600 of the amount awarded. The plaintiff formally accepted the court's remittitur and Movible Offshore appealed.[1]

■ We reject the appellant's rather labored argument that there was no substantial evidence of its causal negligence. It will suffice to say that an examination of the entire record leaves us in agreement with the court below that there was amply sufficient evidence to warrant the jury in concluding that the cause of the unusual difficulty in erecting the derrick was that the substructure on which it rested, the placing of which was Movible Offshore's sole responsibility, was "off square," meaning obviously that its four corners to which the bases of the four legs of the derrick were attached were not at the four corners of a square, so that the derrick "ran catawompus" meaning askew in rigger's vernacular. Without further discussion we turn to other contentions of the appellant.

The appellant contends that the plaintiff by continuing to work on the derrick with knowledge that it was "running in diamond" or "running hard" assumed the risk incident to lining up the holes in the members to be bolted together and therefore is absolutely barred from recovery. We do not agree.

1. The plaintiff's appeal from the order of remittitur will be considered hereinafter.

■ This court in its carefully considered opinion in Pure Oil Company v. Snipes, 293 F.2d 60 (1961), held that federal maritime law applies in cases like this. The question, therefore, is whether the doctrine of assumption of the risk has a place in that body of law when a seaman is not involved. We think it has not.

■ It is now firmly established that assumption of risk is not a defense to an action brought by a seaman under the Jones Act, The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082 (1936), even when the seaman knowingly uses a defective appliance instead of performing his duty in a way he knows to be safe. Socony-Vacuum Oil Co. v. Smith, 305 U. S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939). But in spite of the expanding definition of the term "seaman" [2] we do not see how, indeed it is not even suggested, that the plaintiff herein could possibly be regarded as a "seaman" and as such be entitled to that workman's preferred status in the law. Nevertheless we think the cases cited above lead to the conclusion that the doctrine of assumption of the risk has no place in general federal maritime law.

In The Arizona v. Anelich the Court was concerned with a case in which the seaman's injury occurred at sea and at pages 122 and 123, 56 S.Ct. at page 711, the Court pointed out that the peril of that calling, the discipline to which seamen are subject at sea, the practical difficulties normally encountered on shipboard of avoiding exposure to risks of unseaworthiness and defective appliances made the defense of assumption of the risk "peculiarly inapplicable to suits by seamen to recover for the negligent failure to provide a seaworthy ship and safe appliances." But in Beadle v. Spencer, decided the same day, the Court was concerned with a seaman on a coasting vessel who was injured while unloading lumber from on deck and who could have quit his employment had he wished. However, at page 129, 56 S.Ct. at page 714, the Court said that this made no difference, for "The rules, peculiar to admiralty, of liability for injuries to seamen or others, are as applicable when the injury occurs upon a vessel in port as when at sea * * *." The Court said it need not decide whether employees on a vessel who were not seamen but who had a seaman's status to sue under the Jones Act were also entitled to a seaman's immunity from the defense of assumption of the risk.

■ Socony-Vacuum Oil Co. v. Smith sheds a little more light on the question before us. In that case to be sure the Court was again concerned with a seaman who was injured at sea. And the Court expatiated again on the perils of the calling and the practical difficulties of avoiding known risks at sea. But the Court noted that even prior to the Jones Act no American case appeared ever to have recognized assumption of the risk as a defense to a seaman's suit even in cases plainly calling for its application. Furthermore the Court said 305 U.S. at page 431, 59 S.Ct. at page 266:

"Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages. There being no defense of assumption of risk where the seaman is without opportunity to use a safe appliance, it seems plain that his choice of a defective instead of a safe one, resulting in injury, does not differ in either the quality of the act or in its

2. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Senko v. La Crosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958).

injurious consequences, in any practical way, from his correspondingly negligent use of a safe or an unsafe appliance, where its use has contributed to an injury resulting from a breach of duty by the owner."

In addition the Court said on the next page:

"The incongruity and practical embarrassments in the application of a rule that the negligence in the one case bars recovery, while that in the other only reduces the recoverable damages, are evident. The common law is consistent in holding that both contributory negligence and assumption of risk are defenses. But other considerations apart, it seems inconsistent, and an impracticable refinement, to apply the rule for which petitioner contends [assumption of the risk] in a system of law which maintains the comparative negligence rule to the fullest extent."

We think these statements of twenty-five years ago read in the light of later development by the Court of the law of negligence, both in Admiralty and generally, foreshadow the conclusion that the doctrine of assumption of the risk has no place in federal maritime law even when a seaman is not involved. In accord see Imperial Oil, Limited v. Drlik, 234 F.2d 4, 9 (C.A. 6, 1956), cert. denied, 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236 (1956), and see also Bryant v. Partenreederei-Ernest Russ, 330 F.2d 185, 189 (C.A. 4, 1964).

Appellant next contends that the trial court should have instructed the jury that where the case rested on circumstantial evidence which could point to inferences inconsistent with liability as well as an inference consistent with liability, it was incumbent on the jury to find that the inference supporting liability was more probable than any other inferences [3] before it could return a verdict for the plaintiff. Passing the question, and it is a difficult one, of whether this was a circumstantial evidence case, it was not error for the court to refrain from confusing the jury with the specific instruction requested. The appellant has not cited us to any authority requiring a special instruction on circumstantial evidence in civil cases and we have found none.

■■ As the Supreme Court has repeatedly stated: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S.Ct. 6, 11, 5 L.Ed.2d 20 (1960). This being so an instruction that the jury is to evaluate and analyze circumstantial evidence in a different manner from other credible evidence is at best confusing. What the Court has stated in regard to a special instruction in a criminal case applies with even greater force here:

"* * * the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.

"Circumstantial evidence in this respect is no different from testimonial evidence."

Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). This is the established view in this circuit. Gregory v. United States, 5 Cir., 253 F.2d 104, 110 (1958).

In this case the court instructed the jury that if the proof failed to establish any essential element of the plaintiff's case by a preponderance of the evidence it should find for the defendant. And the court then stated, "As a general rule, the law makes no distinction between direct

---

3. The inferences inconsistent with liability which the appellant insists the jury should have been told they must find improbable are: 1) that the derrick ran "catawompus" because the platform, which was Mobil's responsibility, was off level, 2) that the derrick ran "catawompus" because of faulty erection by the rig builders.

and circumstantial evidence, but simply requires the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial."

■ These instructions, coupled with comprehensive descriptions of the essential elements of negligence and proximate causation, were all that were required. The jury was told that they must be convinced by a preponderance of the evidence that the defendant's negligence proximately caused the appellee's injury. In following these instructions it was of necessity incumbent on the jury to reject the hypotheses inconsistent with liability as less probable than the hypothesis consistent therewith. The suggested instruction would have added nothing, except as we have stated, confusion.

■ We have considered this appellant's other assertions of error only to reject them as too insubstantial to warrant extended discussion. It will suffice to say that although the verdict, even as reduced by the court, is certainly generous, we cannot conclude that the court abused its discretion in not reducing it still further.

■ The appeal by the plaintiff below from the order of remittitur is wholly without merit. It is old and established law that one who has secured a judgment cannot retract a condition to which he assented in order to obtain it.

"The plaintiff, by not insisting on the alternative allowed him by the court, of having a new trial of the whole case, but electing the other alternative allowed, of filing a remittitur of half the amount of the original judgment, and thereupon moving for and obtaining an affirmance of that judgment as to the other half, waived all right to object to the order of the court, of the benefit of which he had availed himself." Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41, 52, 15 S.Ct. 751, 756, 3^ L.Ed. 889 (1895), and cases cited. See also Woodworth v. Chesborough, 244 U.S. 79, 37 S.Ct. 583, 61 L.Ed. 1005 (1917).

Affirmed.