**Robert J. Flannery, et al., Plaintiffs-Appellees, v. Arthur C. Allyn, Jr., Defendant-Appellant.**

Gen. No. 50,345.

First District, Third Division.

October 6, 1966.

 ██

Thomas R. Mulroy, Edward W. Rothe and Lewis E. Striebeck, Jr., of Chicago (Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, of counsel), for appellant.

John J. Burns, Jr. and William J. Harte, of Chicago, for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This involves an appeal seeking to reverse judgments entered against the defendant in favor of each of the plaintiffs in the amount of $10,000 in an action of libel.

This case was previously tried and appealed to this court, and the judgments were reversed and the cause remanded to the trial court. Flannery v. Allyn, 47 Ill App2d 308, 198 NE2d 563. In the first appeal this court held that the letter of the defendant relating to the plaintiffs was a qualifiedly privileged communication and that the plaintiffs were required to prove actual malice to justify a recovery.

The defendant raises two points, (1) the trial court applied a constitutionally defective definition of actual malice, and (2) the judgments should be reversed, without remand, for lack of clear and convincing proof of actual malice.

The plaintiffs in their brief contend that the defendant cannot urge for the first time in the appellate court defenses based upon any constitutional issues since they

were not raised in the trial court, and were not properly preserved for review; that the defendant is restricted to the theory upon which the case was tried in the trial court, and cannot shift his theory or assume a different position in the appellate court; that the plaintiffs were members of a police force and were not public officials within the meaning and purview of the United States Supreme Court decisions, and the application of these decisions in no way applies to them; that the issue of whether the defendant was or was not guilty of actual malice is a question of fact to be determined by the jury; that actual and express malice may be shown by failure to make a proper investigation, ill will, mode and extent of publication and falsity of publication, and that since the jury was directed by defendant's peremptory instruction, that in order for them to find in favor of the plaintiffs, they must find that the defendant was actuated by actual malice in writing the letter, it must be conceded that the jury by the verdicts in favor of the plaintiffs found that defendant was actuated by actual malice.

The pertinent facts in this case are the following:

On July 21, 1958, the defendant dictated and sent the following letter to Chief George Otlewis of the Chicago Park District:

> "Chief George Otlewis
> Police Division
> Chicago Park District
> Administration Building
> 425 East 14th Boulevard
> Chicago 5, Illinois
>
> Prior to noon on March 23rd on the Outer Drive, the officers driving Police Car #920, license #M7716, solicited a check from my daughter, a copy of which is enclosed, when the car in which she was riding was stopped, for 'speeding.' When

she asked the officers to whom the check should be made, they said, 'cash, what else.' The check was pre-dated March 22nd because the 23rd was a Sunday. Further, this solicitation was done in front of witnesses.

I regret having to advise you of this situation at such a late date, but you will note that the check was not put through the bank until the 31st, and since my daughter is away at school, and we just recently returned from a trip to Hawaii, there was no opportunity to present this matter until now. I expect disciplinary action to be taken promptly. The newspapers have not been advised, and I have no intentions at the present time of doing so.

A. C. ALLYN, JR. (signed)

A. C. ALLYN, Jr.

djd"

In July, 1958, while helping his daughter, Dorothy, balance her bank statement, the defendant, Allyn, saw a check drawn by his daughter in the amount of $15, payable to cash, and bearing an endorsement of a bar on North Clark Street. There was no other endorsement on the check. The defendant asked his daughter for an explanation. Dorothy said that she had given the check to a policeman in payment of a "fine" when a car driven by Paul Power, in which Dorothy and Sue Owens were passengers, had been stopped on the Outer Drive for speeding. Dorothy told her father that the fine was $25 but that Power had only $10, and she wrote a check for $15 to make up the difference. The testimony of the defendant and his daughter are contradictory as to whether the check was given to the policeman on the Outer Drive or outside of the Park District Police Station. However, the defendant, in his

368

brief, under the heading "What Actually Happened" states the following:

### "What Actually Happened

"What actually happened was that Paul Power did not have his driver's license and, consequently, plaintiffs had him drive to the North Park District Station in Lincoln Park for booking. There, Officer Moore issued him a ticket for speeding and cash bail was fixed at $25. Power had only $10 and Dorothy and Sue had no money. Dorothy asked if she could write a check for the difference, but was told that the Police Department did not accept checks. She tried to cash a check in the neighborhood, but, it being Sunday morning, was unable to do so. Finally, although not a customary thing to do, Officer Flannery decided to help the young people and personally cashed her check. Power was thus able to make bond and avoid being locked up overnight."

When Allyn's letter was received Chief Otlewis turned it over to Captain Northen for investigation and recommendation. It was determined that plaintiffs were assigned to car 920 on March 23rd, the date referred to in the Allyn letter. An investigation was conducted and it was determined that a ticket had been issued to Power and that Power had posted bond. Captain Northen then called Chief Otlewis and said he was forwarding a report with the recommendation that the plaintiffs should be commended rather than disciplined. Captain Northen also called the defendant telling him of what he had learned, and Allyn said that he would not be satisfied until he had checked the story with Paul Power, who was still in Canada. On July 21, 1958, Allyn was unable to reach Paul Power, the driver of the car which had been stopped for speeding, since he was in Canada

369

and could not be reached by telephone or telegraph. After talking to Power, Allyn told Captain Northen that he would write Chief Otlewis withdrawing his complaint. On August 28, 1958, the defendant wrote the following letter to Chief Otlewis of the Chicago Park District:

"Chief George A. Otlewis
Chicago Park District
Administration Building
425 East 14th Blvd.
Chicago 5, Illinois

Please refer to my letters to you dated July 21st and July 28th of this year.

I have now had an opportunity to discuss the matters contained in those letters in detail with the driver of the vehicle. It is now clear that the apparent infraction of the rules by your officers arose from a failure on the part of the driver of the vehicle, and also on the part of the officers not to disclose to my daughter the nature of the solicitation of her check. The officers involved did generously offer to the driver of the vehicle to cash a check to permit the driver to put up the necessary bond. The bond was put up and a receipt was given therefor.

I do not think that it was wise for the officers to cash a personal check, but I must say that it was quite generous of them to do so. Thank you for your cooperation in this regard.

A. C. ALLYN, JR.

A. C. Allyn, Jr.

djd

cc: Captain John Northen"

In the previous appeal in this case it was pointed out by us that only one interpretation could be placed upon the letter, namely, that the defendant was accusing the officers of soliciting and accepting a bribe, which amounts to an imputation of the commission of a crime, and it was also held in the previous case that many police officers in the police station, who were not assigned to investigate the matter, read the defendant's letter, and that the persons who read the letter knew that it referred to the plaintiffs. There is no doubt as to the publication of the letter.

In the previous opinion in this case, Flannery v. Allyn, supra, on page 319 we said:

> "In a case where there is a qualified privilege and malice is therefore not inferred, the burden of proving malice is upon the plaintiff, and this must be proven to the satisfaction of the jury. This case must be retried because we hold that the letter was qualifiedly privileged, and therefore the jury must determine whether or not there was actual malice on the part of the defendant."

The evidence in this case showed that it was common knowledge at the North Park Station that plaintiffs had been accused of taking a bribe, and they were shunned by their fellow officers and the wives of their fellow officers, which caused them considerable mental anguish. This despite the fact that they were completely exonerated.

The plaintiffs in their brief argue that the defendant cannot in the appellate court for the first time urge defenses which were not properly presented to the lower court, and that defendant's failure to raise the constitutional defenses at the trial constitutes a complete waiver of such constitutional defenses. The plaintiffs also point out that the defendant at no time presented

371

to the trial court any defenses based on constitutional issues. We believe that we must discuss this point at the outset. The constitutional issues referred to by the defendant arise out of the decision of the United States Supreme Court in New York Times Co. v. Sullivan, 376 US 254, decided March 9, 1964. This was a libel action, brought by the Montgomery, Alabama Commissioner of Police, based upon a full page advertisement appearing in the Times, which contained false statements concerning the handling of racial demonstrations by the Montgomery police. A check of the Times' own files would have shown some of the statements in the advertisement to be false and no effort was made by the Times to confirm the factual accuracy of the statements in the advertisement. The Supreme Court of the United States in that case resolved a conflict among the libel laws of the various states regarding criticism of public officials by holding that the free speech and free press guarantees of the First Amendment to the Constitution are applicable in measuring the permissible scope of the civil libel laws of the States, and that the constitutional guarantees require a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

A later United States Supreme Court decision, Garrison v. Louisiana, 379 US 64, held that neither intent to injure nor lack of due care was sufficient to meet the constitutional test of the Times case, and that only an intent to injure through the calculated use of a falsehood or the reckless disregard of truth would destroy the constitutional protection.

The basis of the constitutional privilege set up by the Supreme Court of the United States in the Times case, supra, related to a public official and there can be

little doubt that a Commissioner of Police, who was an elected official, is a public official. The question of whether police officers or patrolmen can be considered public officials is one of the issues raised in this case on appeal, but that issue can be reached only if defendant has not waived the constitutional privilege by failing to present a defense based thereon during the trial. The case of New York Times Co. v. Sullivan, supra, was decided approximately three months prior to the second trial in this case, but apparently did not come to the attention of the attorney who tried the case for the defendant in the trial court, and the definition of malice as therein set forth was not presented to the court on the trial of this case. The question of whether the plaintiffs were public officials was not raised by the defendant, was not in issue and was not decided by the trial court in this case.

The defendant contends that plaintiffs' instructions 4 and 7 permitted the jury to infer actual malice from circumstantial evidence, such as failure to make a proper investigation, ill will, mode and extent of publication and falsity. Plaintiffs' instruction 4 was as follows:

"A fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved."

Plaintiffs' instruction 7 was as follows:

"The Court instructs the Jury that you may take into consideration evidence, if any, of failure to make a proper investigation, ill will, mode and extent of publication and falsity as tending to show actual or express malice."

The attorney for the defendant objected to plaintiffs' instruction 4 on the basis that there was no circumstantial evidence in the record showing any personal

animosity or ill will between the parties. This objection was overruled. The attorney for the defendant, likewise, objected to plaintiffs' instruction 7 in that he said it was not a proper statement of the law in this case, and added, "The Appellate Court has ruled that this is a qualifiedly privileged communication and that, in order for the plaintiff to sustain his action, he must prove actual malice." The objections to plaintiffs' instructions 4 and 7 did not raise a constitutional privilege under the First Amendment to the Constitution of the United States. This objection, of course, would be material only if the plaintiffs were public officials.

The court gave the following two peremptory instructions at the request and on behalf of the defendant, as follows:

"Instruction #2

"The Court instructs the Jury that the letter sued upon in this case is a qualifiedly privileged communication and you are directed to find for the defendant unless you find from the evidence that defendant was actuated by actual malice in making such communication. In this connection you are instructed that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that defendant was actuated by actual malice in writing the letter. You are further instructed that actual malice means ill will or any wrongful or wicked motive which prompts or induces the act complained of."

Instruction 9 reads as follows:

"The term 'malice' is applied to a wrong which is inflicted with an evil intent, design or purpose and implies that the guilty party was actuated by improper or dishonest motives and intended to perpetrate an injury or wrong on another.

374

"In order to sustain this action for libel, it must be proved by a greater weight of all the evidence that the letter was written by the defendant with malice and, if not so proved, you should find for the defendant."

The court also at the defendant's request gave the following instruction:

"Instruction #6
" 'Malice in fact' means ill will towards a particular person, an actual intention to injure or defame him, and in the instance of a qualifiedly privileged communication, an action cannot be sustained without proof of actual or express malice—malice in fact."

By these three instructions the jury was directed to find for the defendant unless it found from the evidence that the defendant was actuated by actual malice in writing the letter.

Both the plaintiffs' and defendant's instructions were based upon the law of Illinois relating to actual malice, and the case was tried below on that theory.

"Actual malice may be inferred from falsity, absence of proper cause or other relative circumstances, or it may be deduced from the libel itself or from the communication of which it forms a part, and all circumstances surrounding the transactions are proper for consideration, including the failure to make a proper investigation." ILP Vol 33, Slander and Libel, § 114, page 427.

In Van Norman v. Peoria Journal-Star, Inc., 31 Ill App2d 314, 175 NE2d 805, the court said on page 327:

"The existence of actual malice may be inferred where a defamatory publication is made without proper cause or excuse, (John vs. Tribune Co., 28

375

Ill App2d 300, 316, 171 NE2d 432, 441) or from falsity, absence of proper cause or other relative circumstances or it may be deduced from the libel itself, or from the communication of which it forms a part."

The court continued on page 330:

"Instruction No. 19 told the jury 'that you may take into consideration the evidence, if any, of failure to make proper investigation, ill-will, repetition of the libel, mode and extent of publication, and falsity as tending to show actual or express malice.' The objection to this instruction is that it improperly uses the word 'ill-will' and also the phrases 'extent of publication' and 'a proper investigation' and leaves to the jury too wide a latitude to conjecture whether the evidence shows actual malice. The criticism of the use of the words 'ill-will' and 'extent of publication' was not made at the conference on instructions. In Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 64 NE2d 751, it is said: (p 590) 'The existence of malice may be inferred. Actual malice may be inferred from falsity, absence of proper cause, or other relative circumstances, or it may be deduced from the libel itself, or from the communication of which it forms a part. All circumstances surrounding the transaction are proper for consideration, including the failure to make a proper investigation.' In the instant case the defamatory article was admittedly false and there is evidence in the record of the other enumerated items which this instruction told the jury they were authorized to take into consideration in determining whether defendant was actuated by express malice. There is no merit in defendant's objection to this instruction."

In Cook v. East Shore Newspapers, Inc., et al., 327 Ill App 559, 590, 591, 64 NE2d 751, the court said:

"The existence of malice may be inferred. Actual malice may be inferred from falsity, absence of proper cause, or other relative circumstances, or it may be deduced from the libel itself, or from the communication of which it forms a part. All circumstances surrounding the transaction are proper for consideration, including the failure to make a proper investigation. (33 Am Jur pp 247 to 251, chapter on Libel and Slander, pars 266 and 267.) In the case of Chambers v. Leiser, 43 Wash 285, 86 Pac 627, 10 Ann Cas 270, 54 ALR 1148, the court said:

" 'It was therefore incumbent upon plaintiff, by means of the matters in the letter or by any other competent evidence, to show that defendant had been actuated by malice or ill will towards plaintiff, or had included in said communication false and libelous matters, not pertinent or reasonably necessary to the subject matter which it was defendant's privilege to communicate, or that defendant had not made reasonable inquiry and investigation, but had written recklessly or knowingly, falsely and not in good faith; and upon establishing any of these matters, the plaintiff would have been entitled, on account of the presumption of malice, falsity, and injury arising from the matter libelous per se, to recover, unless the defendant should have established the truth of the letter's libelous contents.' "

■ There can be no doubt but that this case was tried on the theory that the letter sent by the defendant was qualifiedly privileged and that actual malice had to be shown by the plaintiffs, and from the record before us it cannot be said that the defendant relied upon a

constitutional privilege, and the failure of the defendant to raise constitutional defenses at the trial constituted a waiver of such constitutional defenses.

"The general rule repeatedly adhered to by the Illinois courts is that issues, points, or contentions not presented in the trial court and properly preserved for review will not be considered on appeal. Stated in another way, the action of the trial court in failing to do what it was never asked to do cannot be assigned as error.

. . . . . .

"The general rule that questions not presented in the trial court will not be considered on appeal applies to constitutional questions. Accordingly, the question of the constitutionality or validity of a statute, or the question of the constitutionality or validity of a municipal ordinance, or rule of the court, will not be considered by the reviewing court where the question was not raised in the trial court." ILP Vol 2, Appeal and Error, § 181.

In Pennsylvania R. Co. v. Illinois Brick Co., 297 US 447, the Supreme Court found that no constitutional question was, by answer, motion or otherwise, expressly raised in the trial court. The case was taken directly to the Supreme Court of Illinois and was transferred by that court to the appellate court. The order of transfer did not specify the grounds on which it was based, but the petitioner stated that the Supreme Court necessarily held the constitutional questions had not been properly raised and that on the oral argument, the Chief Justice stated that the transfer would be made because of petitioner's failure properly to raise and preserve the constitutional questions. The court then stated: "As the highest court of the State declined to consider them because not raised in the circuit court or presented to

it in accordance with practice that unquestionably was well established and reasonable, this court is without jurisdiction to consider either of them."

In Kioutas v. City of Chicago, 59 Ill App2d 441, 208 NE2d 587, this court held that a party will not be permitted to argue on appeal a defense not interposed by his answer, and further, the theory upon which the case is tried below may not be changed on review.

In Curtis Pub. Co. v. Butts, 351 F2d 702, the court held that a defendant waived any right it may have on appeal to challenge the verdict and judgment on any of the constitutional grounds appearing in New York Times Co. v. Sullivan, 376 US 254, where it had failed to raise the defenses based on constitutional issues in the trial court. The court in the Butts case, supra, on page 711 said:

> "Without expressing any opinion as to whether Times fundamentally changed the substantive law applicable to libel cases, or whether the charge on malice given by the trial court was adequate under Times, or whether Butts was the kind of 'public official' contemplated by Times, or whether a reversal might otherwise be required if the constitutional issues had been timely presented, we hold that Curtis has clearly waived any right it may have had to challenge the verdict and judgment on any of the constitutional grounds asserted in Times."

See also Department of Public Works and Buildings v. The Chicago Title and Trust Co., 408 Ill 41, 95 NE2d 903; Zelney v. Murphy, 387 Ill 492, 56 NE2d 754; People v. Lipski, 390 Ill 70, 60 NE2d 422.

The court in giving defendant's instruction #2, hereinbefore set forth, defined actual malice as meaning ill will or any wrongful or wicked motive which prompts or induces the act complained of. That instruction was

379

not based upon Times' definition of actual malice, namely, that the defamatory falsehood relating to a *public official* is constitutionally privileged unless plaintiff proves actual malice on the part of the defendant, that is, with knowledge of its falsity or with reckless disregard of whether it was false or not. We must, in view of the foregoing, conclude that the constitutional privilege sought to be urged by the defendant at this time has been waived by his failure to preserve the question by answer, motion, or in any other manner, in the trial court.

It will be unnecessary for the purpose of this opinion, therefore, to decide whether the two plaintiffs, who were policemen, come within the category of public officials, as was contemplated by the Supreme Court of the United States in New York Times Co. v. Sullivan, supra.

We next consider the question whether the evidence adduced by the plaintiffs in this case was, as a matter of law, sufficient to support a finding of actual malice by the jury.

The defendant contends that the trial court's definition of malice was grossly insufficient in that the court instructed the jury that it could take into consideration "failure to make the proper investigation," "ill will," "mode and extent of publication," and "falsity" as tending to show actual or expressed malice. The defendant also contended that the only proper instruction would have been that set forth in New York Times Co. v. Sullivan, supra, wherein the Supreme Court said on page 279:

> "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—

that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

As we have heretofore pointed out, the constitutional privilege was waived in this case, and the case was tried on the basis of actual malice as defined by Illinois courts. In our previous opinion in this case (Flannery v. Allyn, 47 Ill App2d 308, 319, 198 NE2d 563), we cited from the case of Gassett v. Gilbert, 6 Gray (Mass) 94, 54 ALR 1149, wherein the following was said:

"The sole duty of the court, therefore, in such cases, is to determine whether the occasion, in the absence of actual malice, would justify the publication. If so, then it is incumbent on the plaintiff to prove the existence of malice, in order to sustain his action; and this must be shown to the satisfaction of the jury, whose exclusive province it is to pass upon the question. But it is not necessary to prove it by extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, and even from the terms of the publication itself."

In Adair v. Timblin, 186 Ill App 133, the court stated that to find that a communication is qualifiedly privileged means no more than that the occasion of making it rebuts the prima facie inference of malice arising from the publication, and places on the plaintiff the onus of proving malice in fact; but not proving it by extrinsic evidence only; he has still the right to require that the alleged libel itself be submitted to the jury to judge whether there is evidence of malice on the face of it.

In the letter of July 21, 1958, addressed to Chief Otlewis the defendant accused the plaintiffs of soliciting the check from his daughter, and then made the inference that there had been no traffic violation which

would have justified the plaintiffs stopping the car, since he placed the word "speeding" in quotes. There is no evidence in this case that Paul Power was not speeding at the time he was stopped by the plaintiffs on the Outer Drive. The defendant then proceeded in his letter to state "when she asked the officers to whom the check should be made, they said, 'cash, what else.' " There is no evidence in this case that the police officers used the phrase "cash, what else."

The testimony of Dorothy Allyn and Sue Owens, the other occupant of the car, was that when the officer had agreed to cash Dorothy Allyn's check she asked how the check should be made out and the officer said to make it out to cash. The defendant must have known that the phrase "cash, what else" was not correct, or there would have been some evidence offered in the trial of this case to cover that phrase. It was possible for the jury to believe that by using that type of language the defendant sought to do harm to the plaintiffs, and was motivated by actual malice. The defendant in the same letter stated, "I expect disciplinary action to be taken promptly," and "The newspapers have not been advised, and I have no intentions at the present time of doing so," which would tend to show that the defendant had already adjudicated the guilt of the plaintiffs in his mind. The implication in the letter is clear that if the plaintiffs were not disciplined the defendant was going to divulge his story to the newspapers, and that Chief Otlewis should take immediate action. Even the letter of August 28, 1958, written by the defendant to Chief Otlewis, after the defendant had determined that the plaintiffs had not been guilty of any wrongdoing but had done a favor for his daughter, could have been construed by the jury as showing actual malice. In it the defendant said, "It is now clear that the apparent infraction of the rules by your officers arose from a failure on the part of the driver of the

382

vehicle, and also on the part of the officers not to disclose to my daughter the nature of the solicitation of her check." The evidence does not disclose that any rule of the Police Department had been violated. One of the plaintiffs testified that the Desk Sergeant cashed as many as twelve checks a day, depending upon the persons. Also, the accusation by the defendant in his second letter to Chief Otlewis, wherein he again refers to the "solicitation of her check," could have been construed by the jury as evidence of malice on the part of the defendant. All of the evidence in this case, including the testimony of Dorothy Allyn and Sue Owens, was to the effect that the police officers had not solicited the check but that Dorothy Allyn suggested and volunteered to give a check.

In a pretrial deposition of the defendant, which was read at the trial, the following questions were asked:

"Q Was it your intention, if you knew at the time they put up the money to make bond, you would never have written that letter?

A I would not have written that precise letter, no.

Q You would not ask in the letter these men be subjected to disciplinary action?

A I am not sure exactly what I would have written.

Q Mr. Allyn, would you have written that letter to Chief Otlewis that these men be subjected to discipline when they had done a favor for Mr. Power and indirectly to your daughter?

A I have no idea what I would have written to them. I think I would have written them.

Q And asked for disciplinary action?

A That is possible, but I don't know."

■■ As was pointed out in the previous opinion in this case, (Flannery v. Allyn, 47 Ill App2d 308, 319, 198 NE2d 563) "In a case where there is a qualified privilege and malice is therefore not inferred, the burden of proving malice is upon the plaintiff, and this must be proven to the satisfaction of the jury. This case must be retried because we hold that the letter was qualifiedly privileged, and therefore the jury must determine whether or not there was actual malice on the part of the defendant." This the jury has done and the court properly entered judgments on the verdict.

Judgments affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.