David **DORIN**, Counter-Plaintiff-Appellee and Appellant,

v.

The **EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES,** Counter-Defendant-Appellant and Appellee.

**Nos. 15374, 15375.**

United States Court of Appeals Seventh Circuit.

June 29, 1967.

74

Barry L. Kroll, Chicago, Ill., for David Dorin, plaintiff-appellee, cross-appellant, Epstein, Manilow & Sachnoff, Chicago, Ill., of counsel.

Miles G. Seeley, Wm. Bruce Hoff, Jr., Burton E. Glazov, Chicago, Ill., for The Equitable Life Assurance Society of the United States, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

Before CASTLE, KILEY and FAIR-CHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Cause of action for defamation asserted by counterclaim by David Dorin against his former employer, The Equitable Life Assurance Society of the United States (Equitable).[1] The jury found for Dorin, assessing compensatory damages at $57,500 and punitive damages at $125,-000. The district court, however, ruled that unless Dorin filed a remittitur agreeing to reduce the awards to $17,500 and $7,500, respectively, Equitable's motion for a new trial would be granted. Dorin filed the remittitur.

On appeal, Equitable contends that (1) its motion for a directed verdict should have been granted because the communication was qualifiedly privileged and there was no evidence of malice, (2) its motion for a new trial should have been granted because the district court found "that the jury was inflamed by passion and prejudice in awarding the amount of damages," and (3) that Dorin's cross-appeal should be dismissed because by filing the remittitur he waived objection to the judgment.

On cross-appeal, Dorin contends that the district court abused its discretion in requiring a remittitur as a condition of the denial of Equitable's motion for a new trial.

1. *Equitable's motion for a directed verdict.* This case is related to Jacobson v. Equitable Life Assurance Soc'y of the United States, 7 Cir., 381 F.2d 955, which was an action by named beneficiaries to recover on a life insurance policy issued by Equitable, Dorin having been the soliciting agent. Equitable denied liability on several grounds, one of which was that the insured concealed material facts relating to a change of health during the period between the time he answered questions in the medical portion of the application and the payment of the first premium, the date the insurance went into effect.

During Equitable's investigation of the Jacobson claim, it obtained information that when Dorin accepted the first premium, he had some degree of knowledge regarding the insured's change of health and his plans to enter the hospital for corrective surgery and that when Dorin delivered the policies by mail to the insured, he had knowledge that the insured had just had a "long and complicated operation."

Dorin's employment was terminated and he was joined as a third party defendant in the *Jacobson* Case, Equitable contending that if it was liable to the beneficiaries, Dorin was liable to it by reason of breaches of contractual and fiduciary duty. Dorin then filed the counterclaim for defamation that is involved here. The issues on the counterclaim were tried separately.

After Dorin was terminated by Equitable, he sought employment, or applied for an agency, with Massachusetts Mutual Insurance Company. Massachusetts Mutual granted Dorin an agency contract. The Retail Credit Company was asked to make a routine investigation of Dorin. On May 25, or 26, 1963, the Retail Credit investigator interviewed Dorin's former supervisor, Ernest C. Wentcher, a general agent for Equitable. The report emanating from that interview, and upon which this action is based, contained the following statements:

"He was employed by the Ernest C. Wentcher Agency of the Equitable Life Ins. Co., for 13 years, and was with the Equitable Life Ins. Co., with various ageancies [sic] since 1–18–37, and terminated on 4–12–63. He was an insurance agent selling life and casualty insurance. He was forced into retiring by the company and not eligible for rehire under andy [sic] circumstances. Applicant wrote a $100,-000.00 policy on a man whom he knew was going into hospital for a very serious operation. The man died on the operating table and survivors contended that the Equitable pay the in-

---

1. Jurisdiction is based on diversity.

demnity. Subject denied at first knowing that the man was sick and going into hospital. One year later he changed his story and admitted that he knew man was sick and going to the hospital and wrote the policy anyway. Subject is now a party in a counter suit between Equitable and the survivors of the deceased. Source stated that they had trouble with him in the past in the fact that he would fail to mention important items in the application that would be important to the underwriter such as health, finances, etc. He it seems deliberately witheld [sic] this information from the company just so he could write the policy with no regard for the applicant and most of all with the employer. Stated to be a person who just wanted to sell insurance, no matter what it took to get the applications through. He was a big producer in the end and it was indicated that he made policy holders cash in older policies in order to pay for new policy, with the greater amounts which he was always trying to sell. Actually subject was fired, however record shows that he was forcefully retired. No salary information would be supplied."

When Massachusetts Mutual received the report, Dorin's agency contract was cancelled.

Both of the parties agree that the communication was qualifiedly privileged and the only question is whether there was sufficient evidence of malice to present the question to the jury.

It is apparent that in several respects, Wentcher's statements in the report were substantially exaggerated beyond the truth. In part they went beyond what Wentcher admitted was his information at the time, and in part went beyond what the jury could well have found was information he had when he made the statements. Wentcher said that Dorin wrote a $100,000 policy on a man he knew was going into the hospital for a "very serious" operation. But the evidence showed that when he accepted the first premium Dorin only knew that the insured had a pain in his leg caused by nerve pressure and that he was going into the hospital to have the pressure relieved.

Wentcher stated in the report that the insured "died on the operating table." In fact, the insured recovered completely from the operation, which was on June 30, 1961, and died several months later, on September 20, 1961, of a coronary occlusion and generalized arteriosclerosis.

Wentcher's report also stated that Dorin would fail to mention important items to the underwriters, such as the insured's health and finances and that Dorin deliberately withheld information from the company. However, at the trial, Wentcher admitted that in making the statement, he only had in mind one incident where Dorin had attempted to sell a policy which the company would not issue after certain adverse facts came to light. Dorin introduced evidence that he hadn't been aware of these adverse facts and that after another company issued a policy on the applicant's life, Equitable issued one after all.

█ The report stated that Dorin was a big producer in the end and that he made policyholders cash in older policies in order to pay for new policies. This would indicate to anyone acquainted with the insurance industry that Dorin was a "twister." "Twisting" is a particularly opprobrious term in the industry and refers to inducing people to substitute a new policy for an existing one where the change does not serve the best interests of the insured. But Dorin testified that although he did recommend the cashing in of old policies, he only did so because Equitable recently came out with a particularly good policy, the executive policy, and that he only did so after he took "everything into consideration."

In Flannery v. Allyn [2] the court said:

"'* * * But it is not necessary to prove it [malice] by extrinsic evidence. It may be inferred from the

2. (1966), 75 Ill.App.2d 365, 221 N.E.2d 89, 97.

relation of the parties, the circumstances attending the publication, and even from the terms of the publication itself.'

"* * * to find that a communication is qualifiedly privileged means no more than that the occasion of making it rebuts the prima facie inference of malice arising from the publication, and places on the plaintiff the onus of proving malice in fact; but not proving it by extrinsic evidence only; he has still the right to require that the alleged libel itself be submitted to the jury to judge whether there is evidence of malice on the face of it."

The Restatement of Torts does not use the term "malice":

§ 599. General Principle.

"One who publishes false and defamatory matter of another upon a conditionally privileged occasion is liable to the other if he abuses the occasion."

§ 603. Purpose of Particular Privilege.

"One who upon a conditionally privileged occasion publishes false and defamatory matter of another abuses the occasion if he does not act for the purpose of protecting the particular interest for the protection of which the privilege is given."

■ The trial court's order denying Equitable's motion for directed verdict must be sustained, if, viewing the evidence in the light most favorable to the plaintiff Dorin, there is any evidence which, if believed by the jury, would warrant a verdict against Equitable.[3]

■ The information Wentcher had, much of which has been substantiated on trial, would have justified a report somewhat unfavorable to Dorin, but the jury could find, indeed there is very persuasive evidence, that Wentcher so greatly colored and exaggerated the facts as he understood them that he must have intended to hurt Dorin more than he deserved.

2. *Equitable's motion for a new trial.* In his order on Equitable's motion for a new trial, the judge said:

"* * * The record is clear that Dorin's annual earnings equaled, if they did not exceed, his earnings prior to the publication. The Court observed the counter-plaintiff on the witness stand and arrived at the conclusion that it would be difficult, if not impossible, to injure the feelings or sensitivity of a person so calloused in nature. His total ignorance, or disregard, of the fiduciary relationship that existed with his employer, The Equitable, is beyond comprehension. To me, it is quite obvious that the jury was inflamed by passion and prejudice in awarding the amount of damages above mentioned. Nevertheless, I have previously ruled, and I still feel, that the record contains sufficient evidence of malice to carry the case to the jury. On this state of the record an alternative should be offered to Dorin."

The judge then ruled that if Dorin filed a remittitur, agreeing to reduce the compensatory damages from $57,500 to $17,500 and the punitive damages from $125,000 to $7,500, Equitable's motion for a new trial would be denied. Dorin filed the remittitur.

■ If a verdict is the result of appeals to passion and prejudice, the trial court must unconditionally order a new trial and cannot give the plaintiff an option to accept a lesser amount.[4] Equitable contends the rule is automatically applicable in this case because of the language used by the trial judge in his ruling on the motion for new trial.

■ It is within the trial judge's discretion to conditionally grant a motion for new trial on grounds of excessive-

3. Lescher Bldg. Service, Inc. v. Local Union No. 133 of the Sheet Metal Workers Intern. Ass'n (7th Cir. 1962), 310 F.2d 331, 333.

4. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin (1931), 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243.

ness,[5] and in the absence of a showing of abuse, his ruling must be affirmed. The trial court was of the opinion that even though the verdict was excessive, the record contained "sufficient evidence" of malice. We are of the opinion, after a careful examination of the record, that the evidence of malice was strong, and that whatever the cause of the jury's making an excessive award of damages, the judge could properly conclude that such cause did not infect the jury's finding on the existence of malice to the prejudice of Equitable. There was nothing in the record, other than the size of the award, to impeach the objectivity of the jury or the fairness of the proceedings, and we do not regard the judge's use of the term "passion and prejudice" as carrying the broad meaning which Equitable would attribute to it.

3. *Dorin's cross appeal.* In Casko v. Elgin, Joliet and Eastern Ry. Co.[6] this court held that by consenting to the remittitur, the plaintiff "waived objection to the judgment entered." While the writer of this opinion, speaking individually, would prefer a rule more liberal to the plaintiff, the *Casko* decision states the federal rule, followed in this and most circuits.[7]

Dorin, however, argues that the law of Illinois is applicable here under Erie R. Co. v. Tompkins.[8] In the Illinois courts, Dorin would not be precluded from asserting that the amount of the verdict was proper because Equitable has appealed.[9] Dorin cites Mooney v. Henderson Portion Pack Co.[10] where, in virtually identical circumstances, the sixth circuit held that the state statute controlled.

In Allstate Ins. Co. v. Charneski[11] this court said:

"The history of the Erie doctrine has been a continual retreat from conclusionary labels or mechanical solutions and an increasing emphasis has been placed on the consideration and accommodation of the basic state and federal policy goals involved. By this standard we must determine this case."

In Hanna v. Plumer[12] the Supreme Court again considered the choice of law doctrine in diversity cases and stated, with reference to Guaranty Trust Co. v. York,[13] the case enunciating the "outcome determination" test, at page 468:

"The 'outcome determination' test therefore cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws."

 The two rules govern a problem of procedure in the determination of just damages for a wrong, which problem may not arise at all, and will arise, if it does, after completion of trial. Under the federal rule a plaintiff in Dorin's situation has the choice of taking judgment at the figure set by the judge, or

---

5. Bucher v. Krause (7th Cir. 1952), 200 F.2d 576, 586, cert. den. 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404.

6. (7th Cir. 1966), 361 F.2d 748, 751.

7. Kennon v. Gilmer (1889), 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110; Lewis v. Wilson (1894), 151 U.S. 551, 555, 14 S.Ct. 419, 38 L.Ed. 267; Koenigsberger v. Richmond Silver Mining Co. (1895), 158 U.S. 41, 52, 15 S.Ct. 751, 39 L.Ed. 889; Woodworth v. Chesbrough (1917), 244 U. S. 79, 82, 37 S.Ct. 583, 61 L.Ed. 1005; Movible Offshore Co. v. Ousley (5th Cir. 1965), 346 F.2d 870, 875, and S. Birch & Sons v. Martin (9th Cir. 1957), 244 F.2d 556, 562, 17 Alaska 230. It appears that the fifth circuit does allow the plaintiff to appeal the judgment after he has accepted a remittitur. Compare Delta Engineering Corp. v. Scott (5th Cir. 1963), 322 F.2d 11, 15–16, cert. den. 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176, and Steinberg v. Indemnity Ins. Co. of North America (5th Cir. 1966), 364 F. 2d 266, 268, with Movible Offshore Co. v. Ousley, supra.

8. (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188.

9. 1965 Ill.Rev.Stat. Ch. 110, § 68.1(7).

10. (6th Cir. 1964), 334 F.2d 7.

11. (7th Cir. 1960), 286 F.2d 238, 243.

12. (1965), 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8.

13. (1945), 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

attempting the recovery of a greater amount by a new trial. In theory, if he is entitled to a favorable verdict in a greater amount he will get it from the second jury. Acceptance of the judge's figure, however, does not protect him from reversal on the appeal of his opponent. Under the Illinois statute such plaintiff is given a "shot" at reinstating his damage verdict on appeal if the defendant appeals, and defendant's appeal is unsuccessful. With all respect to the sixth circuit which, incidentally, decided *Mooney* before Hanna v. Plumer,[14] we do not believe that under any "Erie" test this procedural stage in the federal process of adjudication should be governed by the state rule.

Dorin's cross appeal is dismissed, and on Equitable's appeal the judgment is

Affirmed.